# MILES, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE SUCCESSION OF TORREGANO *v.* APEX MARINE CORP. ET AL.

No. 89–1158.   Argued October 3, 1990—Decided November 6, 1990

20

O'CONNOR, J., delivered the opinion of the Court, in which all other Members joined, except SOUTER, J., who took no part in the consideration or decision of the case.

*Allain F. Hardin* argued the cause for petitioner. With him on the briefs was *A. Remy Fransen, Jr.*

*Gerard T. Gelpi* argued the cause for respondents. With him on the brief were *Randall C. Coleman III, C. Gordon Starling, Jr.,* and *Graydon S. Staring.*

JUSTICE O'CONNOR delivered the opinion of the Court.

We decide whether the parent of a seaman who died from injuries incurred aboard respondents' vessel may recover under general maritime law for loss of society, and whether a claim for the seaman's lost future earnings survives his death.

I

Ludwick Torregano was a seaman aboard the vessel M/V *Archon.* On the evening of July 18, 1984, Clifford Melrose, a fellow crew member, stabbed Torregano repeatedly, killing him. At the time, the ship was docked in the harbor of Vancouver, Washington.

Mercedel Miles, Torregano's mother and administratrix of his estate, sued Apex Marine Corporation and Westchester Marine Shipping Company, the vessel's operators, Archon Marine Company, the charterer, and Aeron Marine Company, the *Archon*'s owner (collectively Apex), in the United States District Court for the Eastern District of Louisiana. Miles alleged negligence under the Jones Act, 41 Stat. 1007, as amended, 46 U. S. C. App. § 688, for failure to prevent the assault on her son, and breach of the warranty of seaworthiness under general maritime law for hiring a crew member unfit to serve. She sought compensation for loss of support

and services and loss of society resulting from the death of her son, punitive damages, and compensation to the estate for Torregano's pain and suffering prior to his death and for his lost future income.

At trial, the District Court granted Apex's motion to strike the claim for punitive damages, ruled that the estate could not recover Torregano's lost future income, and denied Miles' motion for a directed verdict as to negligence and unseaworthiness. The court instructed the jury that Miles could not recover damages for loss of society if they found that she was not financially dependent on her son.

The jury found that Apex was negligent and that Torregano was 7% contributorily negligent in causing his death, but that the ship was seaworthy. After discounting for Torregano's contributory negligence, the jury awarded Miles $7,254 for the loss of support and services of her son and awarded the estate $130,200 for Torregano's pain and suffering. The jury also found that Miles was not financially dependent on her son and therefore not entitled to damages for loss of society. The District Court denied both parties' motions for judgment notwithstanding the verdict and entered judgment accordingly.

The United States Court of Appeals for the Fifth Circuit affirmed in part, reversed in part, and remanded. 882 F. 2d 976 (1989). The court affirmed the judgment of negligence on the part of Apex, but held that there was insufficient evidence to support the contributory negligence finding. *Id.*, at 983–985. Miles was therefore entitled to the full measure of $7,800 for loss of support and services, and the estate was entitled to $140,000 for Torregano's pain and suffering. The court also found that Melrose's extraordinarily violent disposition demonstrated that he was unfit and therefore that the *Archon* was unseaworthy as a matter of law. *Id.*, at 983. Because this ruling revived Miles' general maritime claim, the court considered two questions concerning the scope of damages under general maritime law. The court reaffirmed

its prior decision in *Sistrunk* v. *Circle Bar Drilling Co.*, 770 F. 2d 455 (1985), holding that a nondependent parent may not recover for loss of society in a general maritime wrongful death action. 882 F. 2d, at 989. It also held that general maritime law does not permit a survival action for decedent's lost future earnings. *Id.*, at 987.

We granted Miles' petition for certiorari on these two issues, 494 U. S. 1003 (1990), and now affirm the judgment of the Court of Appeals.

## II

We rely primarily on *Moragne* v. *States Marine Lines, Inc.*, 398 U. S. 375 (1970). Edward Moragne was a longshoreman who had been killed aboard a vessel in United States and Florida territorial waters. His widow brought suit against the shipowner, seeking to recover damages for wrongful death due to the unseaworthiness of the ship. The District Court dismissed that portion of the complaint because neither federal nor Florida statutes allowed a wrongful death action sounding in unseaworthiness where death occurred in territorial waters. General maritime law was also no help; in *The Harrisburg*, 119 U. S. 199 (1886), this Court held that maritime law does not afford a cause of action for wrongful death. The Court of Appeals affirmed.

This Court overruled *The Harrisburg*. After questioning whether *The Harrisburg* was a proper statement of the law even in 1886, the Court set aside that issue because a "development of major significance ha[d] intervened." *Moragne, supra*, at 388. Specifically, the state legislatures and Congress had rejected wholesale the rule against wrongful death. Every State in the Union had enacted a wrongful death statute. In 1920, Congress enacted two pieces of legislation creating a wrongful death action for most maritime deaths. The Jones Act, 41 Stat. 1007, as amended, 46 U. S. C. App. § 688, through incorporation of the Federal Employers' Liability Act (FELA), 35 Stat. 65, as amended, 45 U. S. C. §§ 51–59, created a wrongful death action in favor of the per-

sonal representative of a seaman killed in the course of employment. The Death on the High Seas Act (DOHSA), 41 Stat. 537, 46 U. S. C. App. §§ 761, 762, created a similar action for the representative of anyone killed on the high seas.

These statutes established an unambiguous policy in abrogation of those principles that underlay *The Harrisburg*. Such a policy is "to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law." *Moragne, supra*, at 391. Admiralty is not created in a vacuum; legislation has always served as an important source of both common law and admiralty principles. 398 U. S., at 391, 392, citing Landis, Statutes and the Sources of Law, in Harvard Legal Essays 213, 214, 226–227 (R. Pound ed. 1934). The unanimous legislative judgment behind the Jones Act, DOHSA, and the many state statutes created a strong presumption in favor of a general maritime wrongful death action.

But legislation sends other signals to which an admiralty court must attend. "The legislature does not, of course, merely enact general policies. By the terms of a statute, it also indicates its conception of the sphere within which the policy is to have effect." *Moragne, supra*, at 392. Congress, in the exercise of its legislative powers, is free to say "this much and no more." An admiralty court is not free to go beyond those limits. The Jones Act and DOHSA established a policy in favor of maritime wrongful death recovery. The central issue in *Moragne* was whether the limits of those statutes proscribed a more general maritime cause of action. 398 U. S., at 393.

The Court found no such proscription. Rather, the unfortunate situation of Moragne's widow had been created by a change in the maritime seascape that Congress could not have anticipated. At the time Congress passed the Jones Act and DOHSA, federal courts uniformly applied state wrongful death statutes for deaths occurring in state territorial waters. Except in those rare cases where state statutes

were also intended to apply on the high seas, however, there was no recovery for wrongful death outside territorial waters. See *Moragne, supra,* at 393, and n. 10. DOHSA filled this void, creating a wrongful death action for all persons killed on the high seas, sounding in both negligence and unseaworthiness. Congress did not extend DOHSA to territorial waters because it believed state statutes sufficient in those areas. 398 U. S., at 397–398.

And so they were when DOHSA was passed. All state statutes allowed for wrongful death recovery in negligence, and virtually all DOHSA claims sounded in negligence. Unseaworthiness was "an obscure and relatively little used remedy," largely because a shipowner's duty at that time was only to use due diligence to provide a seaworthy ship. See G. Gilmore & C. Black, The Law of Admiralty 383, 375 (2d ed. 1975). Thus, although DOHSA permitted actions in both negligence and unseaworthiness, it worked essentially as did state wrongful death statutes. DOHSA created a near uniform system of wrongful death recovery.

"The revolution in the law began with Mahnich v. Southern S. S. Co., [321 U. S. 96 (1944)]," in which this Court transformed the warranty of seaworthiness into a strict liability obligation. Gilmore & Black, *supra,* at 384, 386. The shipowner became liable for failure to supply a safe ship irrespective of fault and irrespective of the intervening negligence of crew members. *Mahnich v. Southern S. S. Co.,* 321 U. S. 96, 100 (1944) ("[T]he exercise of due diligence does not relieve the owner of his obligation to the seaman to furnish adequate appliances. . . . If the owner is liable for furnishing an unseaworthy appliance, even when he is not negligent, *a fortiori* his obligation is unaffected by the fact that the negligence of the officers of the vessel contributed to the unseaworthiness"). The Court reaffirmed the rule two years later in *Seas Shipping Co. v. Sieracki,* 328 U. S. 85, 94–95 (1946) ("[Unseaworthiness] is essentially a species of liability without fault"). As a consequence of this radical change, unsea-

worthiness "[became] the principal vehicle for recovery by seamen for injury or death." *Moragne*, 398 U. S., at 399. DOHSA claims now sounded largely in unseaworthiness. "The resulting discrepancy between the remedies for deaths covered by [DOHSA] and for deaths that happen to fall within a state wrongful-death statute not encompassing unseaworthiness could not have been foreseen by Congress." *Ibid.*

The emergence of unseaworthiness as a widely used theory of liability made manifest certain anomalies in maritime law that had not previously caused great hardship. First, in territorial waters, general maritime law allowed a remedy for unseaworthiness resulting in injury, but not for death. Second, DOHSA allowed a remedy for death resulting from unseaworthiness on the high seas, but general maritime law did not allow such recovery for a similar death in territorial waters. Finally, in what *Moragne* called the "strangest" anomaly, in those States whose statutes allowed a claim for wrongful death resulting from unseaworthiness, recovery was available for the death of a longshoreman due to unseaworthiness, but not for the death of a Jones Act seaman. See *Moragne, supra*, at 395–396. This was because wrongful death actions under the Jones Act are limited to negligence, and the Jones Act pre-empts state law remedies for the death or injury of a seaman. See *Gillespie* v. *United States Steel Corp.*, 379 U. S. 148, 154–156 (1964).

The United States, as *amicus curiae*, urged the *Moragne* Court to eliminate these inconsistencies and render maritime wrongful death law uniform by creating a general maritime wrongful death action applicable in all waters. The territorial limitations placed on wrongful death actions by DOHSA did not bar such a solution. DOHSA was itself a manifestation of congressional intent "to achieve 'uniformity in the exercise of admiralty jurisdiction.'" *Moragne, supra*, at 401, quoting *Gillespie, supra*, at 155. Nothing in that Act or in the Jones Act could be read to preclude this Court from ex-

ercising its admiralty power to remedy nonuniformities that could not have been anticipated when those statutes were passed. *Moragne, supra,* at 399–400. The Court therefore overruled *The Harrisburg* and created a general maritime wrongful death cause of action. This result was not only consistent with the general policy of both 1920 Acts favoring wrongful death recovery, but also effectuated "the constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.'" *Moragne, supra,* at 402, quoting *The Lottawanna,* 21 Wall. 558, 575 (1875).

### III

We have described *Moragne* at length because it exemplifies the fundamental principles that guide our decision in this case. We no longer live in an era when seamen and their loved ones must look primarily to the courts as a source of substantive legal protection from injury and death; Congress and the States have legislated extensively in these areas. In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. We may supplement these statutory remedies where doing so would achieve the uniform vindication of such policies consistent with our constitutional mandate, but we must also keep strictly within the limits imposed by Congress. Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation. These statutes both direct and delimit our actions.

Apex contends that *Moragne*'s holding, creating a general maritime wrongful death action, does not apply in this case because Moragne was a longshoreman, whereas Torregano was a true seaman. Apex is correct that *Moragne* does not apply on its facts, but we decline to limit *Moragne* to its facts.

Historically, a shipowner's duty of seaworthiness under general maritime law ran to seamen in the ship's employ.

See *Sieracki*, 328 U. S., at 90. In *Sieracki*, we extended that duty to stevedores working aboard ship but employed by an independent contractor. *Id.*, at 95. As this was Moragne's situation, Moragne's widow was able to bring an action for unseaworthiness under general maritime law. In a narrow sense, *Moragne* extends only to suits upon the death of longshoremen like Moragne, so-called *Sieracki* seamen. Torregano was a true seaman, employed aboard the *Archon*. Were we to limit *Moragne* to its facts, Miles would have no general maritime wrongful death action. Indeed, were we to limit *Moragne* to its facts, that case would no longer have any applicability at all. In 1972, Congress amended the Longshore and Harbor Workers' Compensation Act (LHWCA), 86 Stat. 1251, as amended, 33 U. S. C. §§ 901–950, to bar any recovery from shipowners for the death or injury of a longshoreman or harbor worker resulting from breach of the duty of seaworthiness. See 33 U. S. C. § 905(b); *American Export Lines, Inc.* v. *Alvez*, 446 U. S. 274, 282, n. 9 (1980). If Moragne's widow brought her action today, it would be foreclosed by statute.

Apex asks us not to extend *Moragne* to suits for the death of true seamen. This limitation is warranted, they say, because true seamen, unlike longshoremen, are covered under the Jones Act. The Jones Act provides a cause of action against the seaman's employer for wrongful death resulting from negligence that Apex contends is preclusive of any recovery for death from unseaworthiness. See 46 U. S. C. App. § 688.

This Court first addressed the preclusive effect of the Jones Act wrongful death provision in *Lindgren* v. *United States*, 281 U. S. 38 (1930). Petitioner, who was not a wrongful death beneficiary under the Jones Act, attempted to recover for the negligence of the shipowner under a state wrongful death statute. The Court held that the Jones Act pre-empted the state statute: "[The Jones] Act is one of general application intended to bring about the uniformity in the

exercise of admiralty jurisdiction required by the Constitution, and necessarily supersedes the application of the death statutes of the several States." *Id.*, at 44. The Court also concluded that the Jones Act, limited as it is to recovery for negligence, would preclude recovery for the wrongful death of a seaman resulting from the unseaworthiness of the vessel. *Id.*, at 47–48. In *Gillespie* v. *United States Steel Corp.*, 379 U. S. 148 (1964), the Court reaffirmed *Lindgren* and held that the Jones Act precludes recovery under a state statute for the wrongful death of a seaman due to unseaworthiness. 379 U. S., at 154–156.

Neither *Lindgren* nor *Gillespie* considered the effect of the Jones Act on a general maritime wrongful death action. Indeed, no such action existed at the time those cases were decided. *Moragne* addressed the question explicitly. The Court explained there that the preclusive effect of the Jones Act established in *Lindgren* and *Gillespie* extends only to state remedies and not to a general maritime wrongful death action. See *Moragne*, 398 U. S., at 396, n. 12.

The Jones Act provides an action in negligence for the death or injury of a seaman. It thereby overruled *The Osceola*, 189 U. S. 158 (1903), which established that seamen could recover under general maritime law for injuries resulting from unseaworthiness, but not negligence. The Jones Act evinces no general hostility to recovery under maritime law. It does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness, *Pacific S. S. Co.* v. *Peterson*, 278 U. S. 130, 139 (1928), and it does not preclude the recovery for wrongful death due to unseaworthiness created by its companion statute, DOHSA. *Kernan* v. *American Dredging Co.*, 355 U. S. 426, 430, n. 4 (1958). Rather, the Jones Act establishes a uniform system of seamen's tort law parallel to that available to employees of interstate railway carriers under FELA. As the Court concluded in *Moragne*, the extension of the DOHSA wrongful death action to territorial waters furthers rather than hinders uni-

formity in the exercise of admiralty jurisdiction.  *Moragne*, *supra*, at 396, n. 12.

There is also little question that *Moragne* intended to create a general maritime wrongful death action applicable beyond the situation of longshoremen.  For one thing, *Moragne* explicitly overruled *The Harrisburg*.  *Moragne*, *supra*, at 409.  *The Harrisburg* involved a true seaman. *The Harrisburg*, 119 U. S., at 200.  In addition, all three of the "anomalies" to which the *Moragne* cause of action was directed involved seamen.  The "strangest" anomaly—that recovery was available for the wrongful death in territorial waters of a longshoreman, but not a true seaman—could only be remedied if the *Moragne* wrongful death action extended to seamen.  It would be strange indeed were we to read *Moragne* as not addressing a problem that in large part motivated its result.  If there has been any doubt about the matter, we today make explicit that there is a general maritime cause of action for the wrongful death of a seaman, adopting the reasoning of the unanimous and carefully crafted opinion in *Moragne*.

## IV

*Moragne* did not set forth the scope of the damages recoverable under the maritime wrongful death action.  The Court first considered that question in *Sea-Land Services, Inc.* v. *Gaudet*, 414 U. S. 573 (1974).  Respondent brought a general maritime action to recover for the wrongful death of her husband, a longshoreman.  The Court held that a dependent plaintiff in a maritime wrongful death action could recover for the pecuniary losses of support, services, and funeral expenses, as well as for the nonpecuniary loss of society suffered as the result of the death.  *Id.*, at 591.  *Gaudet* involved the death of a longshoreman in territorial waters.[1]

---

[1] As with *Moragne*, the 1972 amendments to LHWCA have rendered *Gaudet* inapplicable on its facts.  See *supra*, at 28; 33 U. S. C. § 905(b). Suit in *Gaudet* was filed before 1972.  *Gaudet* v. *Sea-Land Services, Inc.*, 463 F. 2d 1331, 1332 (CA5 1972).

Consequently, the Court had no need to consider the preclusive effect of DOHSA for deaths on the high seas or the Jones Act for deaths of true seamen.

We considered DOHSA in *Mobil Oil Corp.* v. *Higginbotham*, 436 U. S. 618 (1978). That case involved death on the high seas and, like *Gaudet*, presented the question of loss of society damages in a maritime wrongful death action. The Court began by recognizing that *Gaudet*, although broadly written, applied only in territorial waters and therefore did not decide the precise question presented. 436 U. S., at 622–623. Congress made the decision for us. DOHSA, by its terms, limits recoverable damages in wrongful death suits to *"pecuniary* loss sustained by the persons for whose benefit the suit is brought." 46 U. S. C. App. § 762 (emphasis added). This explicit limitation forecloses recovery for nonpecuniary loss, such as loss of society, in a general maritime action.

Respondents argued that admiralty courts have traditionally undertaken to supplement maritime statutes. The Court's answer in *Higginbotham* is fully consistent with those principles we have here derived from *Moragne:* Congress has spoken directly to the question of recoverable damages on the high seas, and "when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Higginbotham, supra,* at 625. *Moragne* involved gap filling in an area left open by statute; supplementation was entirely appropriate. But in an "area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries." *Higginbotham, supra,* at 625.

The logic of *Higginbotham* controls our decision here. The holding of *Gaudet* applies only in territorial waters, and it applies only to longshoremen. *Gaudet* did not consider the

preclusive effect of the Jones Act for deaths of true seamen. We do so now.

Unlike DOHSA, the Jones Act does not explicitly limit damages to any particular form. Enacted in 1920, the Jones Act makes applicable to seamen the substantive recovery provisions of the older FELA. See 46 U. S. C. App. § 688. FELA recites only that employers shall be liable in "damages" for the injury or death of one protected under the Act. 45 U. S. C. § 51. In *Michigan Central R. Co.* v. *Vreeland*, 227 U. S. 59 (1913), however, the Court explained that the language of the FELA wrongful death provision is essentially identical to that of Lord Campbell's Act, 9 & 10 Vict. ch. 93 (1846), the first wrongful death statute. Lord Campbell's Act also did not limit explicitly the "damages" to be recovered, but that Act and the many state statutes that followed it consistently had been interpreted as providing recovery only for pecuniary loss. *Vreeland*, 227 U. S., at 69–71. The Court so construed FELA. *Ibid.*

When Congress passed the Jones Act, the *Vreeland* gloss on FELA, and the hoary tradition behind it, were well established. Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well. We assume that Congress is aware of existing law when it passes legislation. See *Cannon* v. *University of Chicago*, 441 U. S. 677, 696–697 (1979). There is no recovery for loss of society in a Jones Act wrongful death action.

The Jones Act also precludes recovery for loss of society in this case. The Jones Act applies when a seaman has been killed as a result of negligence, and it limits recovery to pecuniary loss. The general maritime claim here alleged that Torregano had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of

death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

Our decision also remedies an anomaly we created in *Higginbotham*. Respondents in that case warned that the elimination of loss of society damages for wrongful deaths on the high seas would create an unwarranted inconsistency between deaths in territorial waters, where loss of society was available under *Gaudet*, and deaths on the high seas. We recognized the value of uniformity, but concluded that a concern for consistency could not override the statute. *Higginbotham, supra,* at 624. Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law.

## V

We next must decide whether, in a general maritime action surviving the death of a seaman, the estate can recover decedent's lost future earnings. Under traditional maritime law, as under common law, there is no right of survival; a seaman's personal cause of action does not survive the seaman's death. *Cortes* v. *Baltimore Insular Line, Inc.,* 287 U. S. 367, 371 (1932); *Romero* v. *International Terminal Operating Co.,* 358 U. S. 354, 373 (1959); *Gillespie,* 379 U. S., at 157.

Congress and the States have changed the rule in many instances. The Jones Act, through its incorporation of FELA, provides that a seaman's right of action for injuries due to negligence survives to the seaman's personal representative. See 45 U. S. C. § 59; *Gillespie, supra,* at 157. Most States have survival statutes applicable to tort actions generally, see 1 S. Speiser, Recovery for Wrongful Death 2d § 3.2 (1975 and Supp. 1989), 2 *id.,* §§ 14.1, 14.3, App. A, and admiralty courts have applied these state statutes in many instances to preserve suits for injury at sea. See, *e. g., Just* v. *Chambers,* 312 U. S. 383, 391 (1941). See also *Kernan* v. *Ameri-*

*can Dredging Co.*, 355 U. S., at 430, n. 4; *Kossick* v. *United Fruit Co.*, 365 U. S. 731, 739 (1961); *Gillespie, supra*, at 157; Comment, Application of State Survival Statutes in Maritime Causes, 60 Colum. L. Rev. 534, 535, n. 11 (1960); Nagy, The General Maritime Law Survival Action: What are the Elements of Recoverable Damages?, 9 U. Haw. L. Rev. 5, 27 (1987). Where these state statutes do not apply,[2] however, or where there is no state survival statute, there is no survival of unseaworthiness claims absent a change in the traditional maritime rule.

Several Courts of Appeals have relied on *Moragne* to hold that there is a general maritime right of survival. See *Spiller* v. *Thomas M. Lowe, Jr., & Assocs., Inc.*, 466 F. 2d 903, 909 (CA8 1972); *Barbe* v. *Drummond*, 507 F. 2d 794, 799–800 (CA1 1974); *Law* v. *Sea Drilling Corp.*, 523 F. 2d 793, 795 (CA5 1975); *Evich* v. *Connelly*, 759 F. 2d 1432, 1434 (CA9 1985). As we have noted, *Moragne* found that congressional and state abrogation of the maritime rule against wrongful death actions demonstrated a strong policy judgment, to which the Court deferred. *Moragne*, 398 U. S., at 388–393. Following this reasoning, the lower courts have looked to the Jones Act and the many state survival statutes and concluded that these enactments dictate a change in the general maritime rule against survival. See, *e. g., Spiller, supra*, at 909; *Barbe, supra*, at 799–800, and n. 6.

Miles argues that we should follow the Courts of Appeals and recognize a general maritime survival right. Apex urges us to reaffirm the traditional maritime rule and overrule these decisions. We decline to address the issue, because its resolution is unnecessary to our decision on the narrow question presented: whether the income decedent would have earned but for his death is recoverable. We hold that it is not.

---

[2] In *Offshore Logistics, Inc.* v. *Tallentire*, 477 U. S. 207, 215, n. 1 (1986), we declined to approve or disapprove the practice of some courts of applying state survival statutes to cases involving death on the high seas.

Recovery of lost future income in a survival suit will, in many instances, be duplicative of recovery by dependents for loss of support in a wrongful death action; the support dependents lose as a result of a seaman's death would have come from the seaman's future earnings. Perhaps for this reason, there is little legislative support for such recovery in survival. In only a few States can an estate recover in a survival action for income decedent would have received but for death.[3] At the federal level, DOHSA contains no survival provision. The Jones Act incorporates FELA's survival provision, but, as in most States, recovery is limited to losses suffered during the decedent's lifetime. See 45 U. S. C. § 59; *Van Beeck* v. *Sabine Towing Co.*, 300 U. S. 342, 347 (1937); *St. Louis, I. M. & S. R. Co.* v. *Craft*, 237 U. S. 648, 658 (1915).

This state and federal legislation hardly constitutes the kind of "wholesale" and "unanimous" policy judgment that prompted the Court to create a new cause of action in *Moragne*. See *Moragne, supra,* at 388, 389. To the contrary, the considered judgment of a large majority of American legislatures is that lost future income is not recoverable in a survival action. Were we to recognize a right to such recovery under maritime law, we would be adopting a distinctly minority view.

This fact alone would not necessarily deter us, if recovery of lost future income were more consistent with the general principles of maritime tort law. There are indeed strong

---

[3] See Mich. Comp. Laws §§ 600.2921, 600.2922 (1986); *Olivier* v. *Houghton County St. R. Co.*, 134 Mich. 367, 368–370, 96 N. W. 434, 435 (1903); 42 Pa. Cons. Stat. § 8302 (1988); *Incollingo* v. *Ewing*, 444 Pa. 263, 307–308, 282 A. 2d 206, 229 (1971); Wash. Rev. Code § 4.20.060 (1989); *Balmer* v. *Dilley*, 81 Wash. 2d 367, 370, 502 P. 2d 456, 458 (1972). See generally 2 S. Speiser, Recovery for Wrongful Death 2d, § 14.7, App. A (1975 and Supp. 1989). Speiser explains that many States do not allow any recovery of lost earnings in survival, and that among those that do, recovery is generally limited to earnings lost from the time of injury to the time of death. *Ibid.*

policy arguments for allowing such recovery. See, *e. g.*, R. Posner, Economic Analysis of Law 176–181 (3d ed. 1986) (recovery of lost future income provides efficient incentives to take care by ensuring that the tortfeasor will have to bear the total cost of the victim's injury or death). Moreover, Miles reminds us that admiralty courts have always shown a special solicitude for the welfare of seamen and their families. "[C]ertainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy." *Moragne, supra,* at 387, quoting Chief Justice Chase in *The Sea Gull,* 21 F. Cas. 909, 910 (No. 12,578) (CC Md. 1865). See also *Gaudet,* 414 U. S., at 583.

We are not unmindful of these principles, but they are insufficient in this case. We sail in occupied waters. Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them. Congress has placed limits on recovery in survival actions that we cannot exceed. Because this case involves the death of a seaman, we must look to the Jones Act.

The Jones Act/FELA survival provision limits recovery to losses suffered during the decedent's lifetime. See 45 U. S. C. § 59. This was the established rule under FELA when Congress passed the Jones Act, incorporating FELA, see *St. Louis, I. M. & S. R. Co., supra,* at 658, and it is the rule under the Jones Act. See *Van Beeck, supra,* at 347. Congress has limited the survival right for seamen's injuries resulting from negligence. As with loss of society in wrongful death actions, this forecloses more expansive remedies in a general maritime action founded on strict liability. We will not create, under our admiralty powers, a remedy that is disfavored by a clear majority of the States and that goes well beyond the limits of Congress' ordered system of recovery for seamen's injury and death. Because Torregano's estate cannot recover for his lost future income under the Jones Act, it cannot do so under general maritime law.

## VI

Cognizant of the constitutional relationship between the courts and Congress, we today act in accordance with the uniform plan of maritime tort law Congress created in DOHSA and the Jones Act. We hold that there is a general maritime cause of action for the wrongful death of a seaman, but that damages recoverable in such an action do not include loss of society. We also hold that a general maritime survival action cannot include recovery for decedent's lost future earnings. Accordingly, the judgment of the Court of Appeals is

*Affirmed.*

JUSTICE SOUTER took no part in the consideration or decision of this case.