**Glenn P. ANGLADA, Jr., et al.**

v.

**TIDEWATER, INC., et al.**

**Civ. A. No. 90–1638.**

United States District Court, E.D. Louisiana.

Dec. 20, 1990.

---

**1.** There has been no trial in this matter. The parties submitted briefs on the issue of the rea-

sonableness of a settlement.

Jerry Bythel Read, Biloxi, Miss., for plaintiffs.

Charles A. Cerise, Jr., Cliffe F. Laborde, Gelpi, Sullivan, Carroll & Laborde, New Orleans, La., for defendants.

Cliffe F. Laborde, Gelpi, Sullivan, Carroll & Laborde, New Orleans, La., for claimant.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is a motion to dismiss Patricia Anglada's claim for loss of consortium and society and Glenn Anglada's claim for prejudgment interest. The motion is by defendant Tidewater, Inc. and on behalf of its vessel, the M/V Sheffie Tide. For reasons set forth below, defendants' motion to dismiss Mrs. Anglada's claim for loss of consortium and society is GRANTED and the motion to dismiss Glenn Anglada's claim for prejudgment interest is DENIED.

## BACKGROUND

This motion probes the reach of new developments in admiralty.

In their complaint Mr. and Mrs. Anglada allege that on February 19, 1990, while working aboard the M/V Sheffie Tide, Mr. Anglada slipped in standing water that Tidewater had allowed to accumulate on a waxed floor in the vessel's lounge area. Mr. Anglada asserts a claim for damages under both the Jones Act and the general maritime warranty of seaworthiness. Mrs. Anglada asserts a claim for loss of consortium and society. Tidewater invokes the Supreme Court's recent decision in *Miles v. Apex Marine, Corp.*, —— U.S. ——, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), and urges that Mrs. Anglada no longer has a cause of action for loss of consortium, and that the injured Jones Act seaman cannot now assert a claim for prejudgment interest. The Angladas argue that *Apex Marine* should be limited to its particular facts, that a claim for loss of consortium remains a valid cause of action under the general maritime law of unseaworthiness, and that the decision has no effect on the Angladas' claim for prejudgment interest on their general maritime claims.

### I. Loss of Consortium

■ Defendants argue that *Miles v. Apex Marine* bars Mrs. Anglada's claim for loss of consortium because the Supreme Court has limited the kinds of damages available in general maritime law personal injury actions to those damages that Congress deemed appropriate under the Jones Act. Plaintiffs counter that *Apex Marine* must be construed narrowly: that nonpecuniary damages are not available to nondependents for general maritime wrongful death actions based on unseaworthiness. To read *Apex Marine* so stingily ignores the very language and methodology of the opinion.

In *Apex Marine,* the Court limited recovery in general maritime unseaworthiness actions for deaths occurring in state territorial waters to pecuniary damages, the same result as in wrongful death unseaworthiness actions under DOHSA. The Court repeatedly underscored the important role that the goal of uniformity in maritime law played in Congress' decision to enact DOHSA and the Jones Act. *Apex*

*Marine,* —— U.S. at ——, —— – ——, 111 S.Ct. at 323, 324–26.

DOHSA grants to all who lose their lives aboard a ship on the high seas, because of the ship's condition, a claim against the vessel for breach of the warranty of seaworthiness. 46 U.S.C.A.App. §§ 761 et seq. (West 1984). Congress enacted DOHSA because, although the Jones Act provided a wrongful death action for families of seamen who died as a result of their employers' negligence, the family of someone who died as a result of a vessel's unseaworthiness had no remedy under general maritime law. *Western Fuel Co. v. Garcia,* 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). State law was the only potential harbor of relief. But because state wrongful death statutes could not reach deaths on the high seas, Congress was compelled to enact DOHSA to fill this apparent gap. Norris, *The Law of Seamen,* § 29:1, at 303 (3d Ed.1985). Congress, in contrast to its efforts directed at cases involving wrongful death unseaworthiness claims, has not enacted any federal legislative remedy for personal injury unseaworthiness claims.

*Apex Marine* does not limit itself to wrongful death claims. It embraces personal injury claims too.

The failure to enact federal legislation for unseaworthiness personal injury claims seems due largely to the erratic history of maritime torts that gave rise to enactment of the Jones Act. *See* Norris, *The Law of Seamen* § 30:1 at 323. Before the Jones Act, seamen had no right of action for injuries caused by negligence. That curious result stemmed from the fellow servant doctrine. *The Osceola,* 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); *see also Apex Marine,* —— U.S. at ——, 111 S.Ct. at 324. However, seamen had some rather undeveloped rights against the vessel owner for injuries caused by the unseaworthiness of a vessel; and they had a limited remedy for maintenance and cure under general maritime law. *Id.* The seamen's unseaworthiness rights of old bear little resemblance to the strict liability remedy we know today—a finding essential to recovery under the old action was the vessel owner's failure to exercise due diligence to keep the vessel seaworthy. *Id.*

Thus, when Congress enacted the Jones Act, it intended to provide seamen with an expanded remedy against their employers for injuries caused by the negligent acts of fellow crew members. No scholar or court has ever intimated that adoption of the Jones Act indicates Congress intended to cast aside the general maritime law of unseaworthiness. Indeed, as *Apex Marine* itself stresses, "The Jones Act evinces no general hostility toward recovery under maritime law. It does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness." *Apex Marine,* —— U.S. at ——, 111 S.Ct. at 324. What drives the Court in *Apex Marine* is that snapshot in time.

Therefore, if, at the time Congress enacted the Jones Act, loss of society or consortium damages were available to spouses of injured seamen under unseaworthiness doctrine, those damages would necessarily be preserved by the same rationale that *Apex Marine* uses to conclude that "Congress must have intended to incorporate" into the Jones Act the judicially created limitation of FELA damages to pecuniary ones; namely, the assumption that "Congress is aware of existing law when it passes legislation." *Apex Marine,* —— U.S. at ——, 111 S.Ct. at 325. Damages for loss of society were not recognized under the general maritime law as it existed at the time the Jones Act was passed.

In fact, the same series of decisions that *Apex Marine* abandons are those that courts relied on to create the general maritime right of a spouse to damages for loss of consortium (long after enactment of the Jones Act). For example, *Apex Marine* unhesitatingly repudiates the breadth of the Supreme Court's earlier decision in *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (wrongful death cases brought pursuant to DOHSA or the Jones Act). *Apex Marine,* —— U.S. at —— – ——, 111 S.Ct. at 325–26. In *Gaudet,* "the Court held that a dependent plaintiff in a maritime wrongful death action could recover for . . . the nonpecuni-

ary loss of society suffered as a result of the death." *Apex Marine,* — U.S. at —, 111 S.Ct. at 324 (citing *Gaudet,* 414 U.S. at 591, 94 S.Ct. at 818.). *Apex Marine* carefully limited *Gaudet* to cases involving the death of longshoremen in territorial waters. *Id.*

*Gaudet* had spawned a series of decisions concerning loss of society and consortium damages. The Supreme Court itself extended the availability of loss of society damages to the wife of a harbor worker who had been injured, not killed. *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). Thereafter, the Fifth Circuit, in *Cruz v. Hendy International Co.,* 638 F.2d 719, 722·(5 Cir.1981) overruled in·part its previous position that the wife of an injured seaman had no claim for loss of consortium. *See Christofferson v. Halliburton Co.,* 534 F.2d 1147 (5 Cir.1976). Because *Apex Marine* now limits *Gaudet* to its facts, and rejected its application to Jones Act and DOHSA death claims, *Apex Marine* implicitly restricts *Alvez* to its facts as well, and doctrinally nullifies its application to claims arising under the Jones Act. *Gaudet* can no longer serve as the conceptual justification for an *Alvez* result. Therefore, it is now apparent that the Fifth Circuit's reliance on *Alvez* in extending loss of consortium damages to the spouses of injured seamen was temporal at best, and it has been implicitly overruled. *Apex Marine* compels a return to the Fifth Circuit's teaching in *Christofferson.*

In *Christofferson,* the Fifth Circuit noted that a claim for loss of consortium under a theory of unseaworthiness had no doctrinal support. *Christofferson,* 534 F.2d at 1149. In fact, at that time, the most respected authority on the issue was a Second Circuit decision, *Igneri v. Cie. de Transports Oceaniques,* 323 F.2d 257 (2 Cir 1963), *cert. denied,* 376 U.S. 949, 84

S.Ct. 965, 11 L.Ed.2d 969 (1964). *Igneri* rejected a spouse's claim for loss of consortium.

Because no general maritime claim for loss of consortium or loss of society pre-existed *Alvez* or the Jones Act, the Court's desire for uniformity and deference to the legislative environment of the times compels the conclusion that loss of society or consortium damages must be rejected in the context of personal injury and wrongful death unseaworthiness claims.[1] Tidewater's motion to dismiss Mrs. Anglada's claim for loss of consortium and society must be granted.

## II. Prejudgment Interest

*Apex Marine,* however, appears to have no effect on Mr. Anglada's request for prejudgment interest. Awards of prejudgment interest on general maritime claims, unlike damage awards for loss of society or consortium, were recognized under general maritime law long before the birth of the Jones Act, and were not the result of a mistaken extension of Supreme Court decisions. *See The Scotland,* 118 U.S. 507, 518, 6 S.Ct. 1174, 1175, 30 L.Ed. 153 (1886) (award of prejudgment interest within the discretion of the trial court); *The President Madison,* 91 F.2d 835 (9 Cir.1937) (citing 19th century cases such as *The Amiable Nancy,* 16 U.S. (3 Wheat) 546, 4 L.Ed. 456 (1817) in support of its decision to award prejudgment interest); *Thompson Towing & Wrecking Ass'n v. McGregor,* 207 F. 209, 220–222 (6 Cir.1913). In fact, the Fifth Circuit characterizes awards of prejudgment interest in general maritime personal injury cases, although well within the discretion of the trial court, as "well-nigh automatic." *Masters v. Transworld Drilling Co.,* 688 F.2d 1013, 1014 (5 Cir.1982); *see also* Annot., *Award of Prejudgment Interest in Admiralty Suits,* 34 A.L.R.Fed. 126, 238–42 (1977).

1. "Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well ... There is no recovery for loss of society in a Jones Act wrongful death action.... It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially-created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." *Apex Marine,* — U.S. at —— ——, 111 S.Ct. at 325–26.

As this Court noted in Section I, when Congress adopted the Jones Act, its purpose was to provide seamen with a remedy against their employers for injuries caused by the negligent acts of fellow crew members. Congress did not intend to cast aside the remedies available to seamen under the general maritime law. It is worth repeating that *Apex Marine* explicitly declares, "The Jones Act evinces no general hostility toward recovery under maritime law. It does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness." *Apex Marine,* —— U.S. at ——, 111 S.Ct. at 324. Prejudgment interest pre-dates the Jones Act. It is in the Court's snapshot in time. Thus, it is beyond the reach of *Apex Marine.*[2]

Accordingly, Tidewater's motion to dismiss Mr. Anglada's claim for prejudgment interest is DENIED, and its motion to dismiss Mrs. Anglada's claim for loss of consortium is GRANTED.

2. It may be argued that the Court went beyond even the breadth read into its decision by this Court. Indeed, the Supreme Court did sigh that, "Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law. *Apex Marine,* —— U.S. at ——, 111 S.Ct. at 326. Whether that comment can be said to reach out at prejudgment interest seems to stretch the Court's comment to the point of wishful thinking. Had the Court wished to go that far, one presumes it would have been more direct in doing so, and would not have employed the methodology which so dominates its decision.