TRIDENT MARINE, INC. et al.

v.

M/V ATTICOS.

Nos. 93–1018, 93–1070 and 93–3116.

United States District Court, E.D. Louisiana.

Dec. 2, 1994.

John Francis Fay, Jr., Alexander N. Breckinridge, IV, Machale Andrew Miller, O'Neil, Eichin, Miller, Breckinridge & Saporito, New Orleans, LA, for Trident Marine Inc.

Randolph J. Waits, James A. Cobb, Jr., John F. Emmett, John Frederick Kessenich, Emmett, Cobb, Waits & Kessenich, P.C., New Orleans, LA, for Poseidon Compania Naviera S.A.

Scott Eric Silbert, Silbert & Garon, New Orleans, LA, for Scott E. Silbert, Lombard & Silbert.

Robert T. Myers, Young, Richaud, Theard & Myers, New Orleans, LA, for Gerald A. McGill, Peter McDavid, McGill & McDavid P.A.

## MEMORANDUM AND ORDER

DUVAL, District Judge.

Poseidon's Motion for Partial Summary Judgment on the issue of loss of society damages presents a controversial admiralty issue the bench has faced with regularity recently: May a Jones Act plaintiff recover nonpecuniary damages from a nonemployer third-party tortfeasor for negligence under the general maritime law after *Miles v. Apex Marine Corp.?*

The instant case arises out of the fatality of three crewmembers of the S/V GALVESTON when it collided with the M/S ATTICOS near the mouth of the Mississippi River on the morning of March 24, 1993. Poseidon Compania Naviera, S.A. (hereinafter "Poseidon"), as owner and operator of the ATTICOS moves this court for Partial Summary Judgment dismissing the claims for non-pecuniary loss filed by the personal representatives of the three estates.

There are four basic theories upon which a true seaman may base a claim for recovery when suffering a personal injury or wrongful death. The first is a Jones Act negligence cause of action.[1] The Jones Act, enacted by Congress in 1920, extends to seamen the same rights and remedies granted to railway workers through the Federal Employers' Liability Act (FELA).[2] The second is a claim based on the Death on the High Seas Act (DOHSA),[3] also enacted by Congress in 1920. The DOHSA allows recovery of pecuniary damages by the surviving beneficiaries of anyone killed on the high seas. The third and fourth are general maritime law actions for unseaworthiness of the ship or for negligence. *See Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539, 549, 80 S.Ct. 926, 932–33, 4 L.Ed.2d 941 (1960); *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); *Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). Because each of these claims is conceptually distinct, a plaintiff may elect to bring a complaint on several claims in order to assure some recovery, or the plaintiff may elect to choose only one such claim. Until *Miles,* the damages recoverable by the plaintiff varied depending upon the theory under which recovery was sought.

In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) the Court created a right for seamen to recover for wrongful death under the general maritime law. *Id.* at 409, 90 S.Ct. at 1792. Necessitated by this creation of a general maritime wrongful death remedy, the

1. 46 U.S.C.App. § 688(a) (1988). The Jones Act does not explicitly state that it is an action predicated on negligence, but it does rely on the negligence-based remedies granted to railway employees in the Federal Employers' Liability Act, 45 U.S.C. § 51 (1988).

2. 45 U.S.C. § 51 (1988). The Jones Act applies to seaman all federal statutes "modifying or extending the common-law right or remedy in cases of personal injury to railway employees." 46 U.S.C.App. § 688(a).

3. 46 U.S.C.App. §§ 761–768 (1988).

Court overruled a line of cases based upon *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886) which stated the old maritime rule that, absent a statute, there was no action for wrongful death in admiralty. *Id.* at 213, 7 S.Ct. at 146–47. The Court concluded that through the simultaneous enactment of DOHSA and the Jones Act Congress intended to achieve uniformity of admiralty jurisdiction so that all seamen would have the right to recovery for the negligence of their employers, regardless of the location of the death or personal injury. *Moragne,* 398 U.S. at 400–01, 90 S.Ct. at 1787–88. Further, the Court noted, the concern for uniformity is a recognition that the various state wrongful death acts had encroached upon the "uniform vindication of federal policies" in admiralty law. *Id.* at 401–02, 90 S.Ct. at 1788.

The *Moragne* Court espoused two broad principles to "guide" lower courts when faced with the determination of the scope of a *Moragne* action. First, the *Moragne* Court sought uniformity in federal maritime law. This goal is illustrated by the Court's statement that "recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts." *Id.* at 401, 90 S.Ct. at 1788. The Court's second goal was to offer "special solicitude" to those persons and their beneficiaries who come within the admiralty jurisdiction of the federal court. *Id.* at 387, 90 S.Ct. at 1780–81.

The wrongful death remedy of the general maritime law prior to *Miles* did not restrict a plaintiff's recovery to pecuniary damages. This cornerstone of maritime jurisprudence was laid by the Supreme Court in *Sea–Land Services v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). In a five-to-four decision written by Justice Brennan, the Court allowed the widow of a longshoreman to recover damages for loss of society. *Id.* at 577–78, 94 S.Ct. at 811–12. In words that would later be echoed in *Miles,* Justice Powell, in dissent, opined that the majority's sweeping holding was a "nearly total nullification of the congressional enactments previously governing maritime wrongful death" and clearly disregarded *Moragne's* concern for uniformity in maritime law. *Id.* at 595, 94 S.Ct. at 819–20 (Powell, J., dissenting).

Because *Gaudet's* broad language did not restrict loss of society damages to cases involving longshoremen injured in territorial waters, courts were soon asked to extend *Gaudet's* holding to general maritime wrongful death actions brought in conjunction with DOHSA and Jones Act claims.[4] In *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the Supreme Court granted certiorari to consider whether a plaintiff who was eligible for remedies within DOHSA could supplement those remedies with a *Moragne* general maritime claim for loss of society. *Id.* at 623–26, 98 S.Ct. at 2013–15. The *Higginbotham* court explicitly limited *Gaudet's* applicability to coastal waters. *Id.* at 623, 98 S.Ct. at 2013–14. Although the Court acknowledged that uniformity of general maritime law would suffer, it noted that when Congress "speak[s] directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Id.* at 624–25, 98 S.Ct. at 2014–15.

Although, prior to *Miles,* the Supreme Court had not decided whether nonpecuniary damages were available in a wrongful death claim based on both the Jones Act and the general maritime law concept of unseaworthiness, the Fifth Circuit in *In re Patton–Tully Transportation Co.,* 797 F.2d 206 (5th Cir. 1986) concluded that dependents of a seaman may recover loss of society damages in a wrongful death action based on unseaworthiness, in addition to any remedies that might be available under the Jones Act. *Id.* at 212–13. Recovery of nonpecuniary damages, however, was not universally allowed[5], and

4. See generally Warren M. Faris, New Vistas of Damages in Maritime Personal Injuries, 43 LA. L.REV. 913 (1983) (discussing the law of maritime personal injury and death and the interpretations of Gaudet made by other courts).

5. The Fifth Circuit in *Ivy v. Security Barge Lines,* 606 F.2d 524 (5th Cir.1979) (en banc), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815, held that nonpecuniary damages were not recoverable in a wrongful death action arising in

resolution of the issue by the Supreme Court was clearly needed.

The Supreme Court eliminated this inconsistency to some degree in *Miles*, holding that a Jones Act seaman may not recover nonpecuniary damages from his employer under a general maritime wrongful death action based on unseaworthiness. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 37, 111 S.Ct. 317, 328, 112 L.Ed.2d 275 (1990). Noting that the Jones Act precluded the recovery of nonpecuniary losses, the Court reasoned that it could not sanction a more expansive remedy than that already given plaintiffs by Congress. *Id.* at 36, 111 S.Ct. at 327–28. The Court's final conclusion was that the holding in *Miles* restored "a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." *Id.* at 33, 111 S.Ct. at 326.

Strictly interpreting the above-quoted phrase, then, *Miles* appears to have reached a very definitive conclusion: there is to be no recovery of any nonpecuniary damages by a Jones Act seaman if the suit results out of a wrongful death regardless whether the suit is brought under a claim of unseaworthiness or negligence. However, some district courts have read *Miles* narrowly limiting its holding to the denial of recovery of nonpecuniary damages only in suits brought against an employer thereby leaving open the possibility of such recovery against third-party nonemployer defendants. *See Rebstock v. Sonat Offshore Drilling,* 764 F.Supp. 75 (E.D.La. 1991).

Subsequent district court decisions, however, have relied on *Miles* to preclude recovery of nonpecuniary damages by injured Jones Act claimants against their employers and third-party nonemployers. *See Turley v. Co–Mar Offshore Marine Corp.*, 766 F.Supp. 501 (E.D.La.1991); *Dunbar v. American*

*Commercial Barge Lines Co.*, 771 F.Supp. 151 (M.D.La.1991); *Breland v. Western Oceanic, Inc.*, 755 F.Supp. 718 (W.D.La. 1991); *Carnival Cruise Lines v. Red Fox Industries, Inc.*, 813 F.Supp. 1185, 1187 (E.D.La.1993); *Ellender v. John E. Graham & Co.*, 821 F.Supp. 1136 (E.D.La.1992). After *Miles* the district courts have consistently ruled that a true seaman may recover only pecuniary damages against his employer for wrongful death or personal injury but the same consistency is lacking with regard to suits against a third-party nonemployer.

In the Fifth Circuit, prior to *Miles*, the spouse of an injured seaman could rely on *Cruz v. Hendy International Co.*, 638 F.2d 719 (5th Cir. Feb. 1981), (overruled by *Michel v. Total Transp., Inc.*, 957 F.2d 186 (5th Cir.1992)), as authority for allowing claims for loss of consortium. The Fifth Circuit in *Cruz* relied primarily on *Gaudet*, which allowed loss of society damages to the widow of a killed longshoreman. *Gaudet*, 414 U.S. at 585, 94 S.Ct. at 814–15. *Cruz* relied as well on the later *American Export Lines v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) which allowed loss of society damages to the spouse of an injured harbor worker. In a well-reasoned decision, *Cruz* espoused a primary goal of the *Miles* court, that is, uniformity in maritime law. *Cruz*, 638 F.2d at 724 (citing *Alvez*, 446 U.S. at 281, 100 S.Ct. at 1677). However, because of the stringent limitations placed on *Gaudet* by *Miles*, the foundation on which *Cruz* stood has since crumbled. *See Miles*, 498 U.S. at 31, 111 S.Ct. at 325 ("The holding of Gaudet applies only in territorial waters, and it applies only to longshoremen.").

Stripped of its foundation, *Cruz* soon collapsed. The Fifth Circuit in *Michel v. Total Transportation, Inc.*, 957 F.2d 186 (5th Cir. 1992) joined a growing parade of federal district courts [6] which have held that a

---

state waters and based solely on the Jones Act; *See also Hlodan v. Ohio Barge Line,* 611 F.2d 71, 75 (5th Cir.1980) ("*Higginbotham* has no bearing upon this Circuit's rule that a Jones Act claim may be joined with a wrongful death claim for nonpecuniary damages based on general maritime law, where the incident does not arise on the high seas, and that nonpecuniary damages may be recovered under the unseaworthiness

claim."); *Smith v. Ithaca Corp.*, 612 F.2d 215, 226 (5th Cir.1980); *But see Sistrunk v. Circle Bar Drilling Co.,* 770 F.2d 455, 460 (5th Cir.1985) *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986) (denying nondependent family members recovery for loss of society damages under general maritime law).

**6.** *See, Dunbar v. American Commercial Barge Lines Co.*, 771 F.Supp. 151, 152 (M.D.La.1991);

spouse may not recover damages for loss of consortium in a general maritime cause of action for personal injuries of a Jones Act seaman. *Michel,* 957 F.2d at 191; *Murray v. Anthony J. Bertucci Constr. Co.,* 958 F.2d 127, 132 (5th Cir.), cert. denied, —— U.S. ——, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992). In so holding, the Fifth Circuit expressly overruled *Cruz.*[7]

Although the *Miles* decision definitively resolved the employer liability issue, as stated earlier, it left open the question whether the Court has also eliminated the seaman's right to recover nonpecuniary and exemplary damages from a third-party tortfeasor in a general maritime law negligence action. *See Rebstock v. Sonat Offshore Drilling,* 764 F.Supp. 75 (E.D.La.1991).

The first case in the Eastern District to recognize nonpecuniary damages, *Rebstock v. Sonal Offshore Drilling,* 764 F.Supp. 75 (E.D.La.1991), came six months after the Supreme Court decided *Miles.* In *Rebstock,* the District Court for the Eastern District of Louisiana, Judge Mentz, held that a seaman's wife could seek loss of consortium damages in a general maritime negligence action against a third party. *Id.* at 76. Acknowledging that the district courts in Louisiana had applied the *Miles* ban on nonpecuniary damages to Jones Act plaintiffs suing under the general maritime unseaworthiness theory[8], the court distinguished *Rebstock* from *Miles,* noting that in *Rebstock* the plaintiffs did not assert a Jones Act claim despite having Jones Act seamen status. *Id.* at 74. Instead the plaintiffs asserted a general maritime law negligence action against the third-party defendant drilling and oil companies. *Id.* at 75. Finding that plaintiffs' status as Jones Act seamen was irrelevant, the court

ruled that plaintiffs could recover loss of consortium damages because the general maritime law of negligence was similar to the common law of negligence. *Id.* at 76[9].

In distinguishing *Miles,* the court opined that the *Miles* court's emphasis on uniformity did not prevent its ruling. The court viewed *Miles* as creating a uniform rule for suits by seamen against their employers, without considering the issue of seamen suing third parties. *Id.* The court in *Rebstock* suggested that because of the LHWCA, to deny plaintiff the loss of consortium damages under the general maritime law of negligence would create the same type of inconsistency in maritime law that *Miles* had attempted to cure. The court noted that section 905(b) of the LHWCA (33 U.S.C. § 905(b)) permits the spouse of a longshoreman suing a nonemployer vessel for negligence to recover loss of consortium damages. If such recovery were denied in the instant case, the spouse of a Jones Act seaman suing a nonemployer for negligence could not equally recover the loss of consortium damages. *Rebstock,* 764 F.Supp. at 76. The court concluded that in the interest of uniformity, as expressed in *Miles,* the inconsistency may be avoided by allowing the nonpecuniary damages claim to stand against the third-party defendants in negligence. *Id.*

Another district addressed the nonpecuniary recovery issue with respect to nonemployer third-party tortfeasors in *Sugden v. Puget Sound Tug & Barge Co.,* 796 F.Supp. 455 (W.D.Wash.1992). The decedent in *Sugden,* a Jones Act seaman working aboard a tug assigned to retrieve a barge from the third-party defendant's dock, allegedly drowned as a result of the third-party defen-

---

*West v. Zapata Gulf Marine Corp.,* 766 F.Supp. 502, 503 (E.D.La.1991); *Cater v. Placid Oil Co.,* 760 F.Supp. 568, 570 (E.D.La.1991); *Anglada v. Tidewater, Inc.,* 752 F.Supp. 722, 725 (E.D.La. 1990).

7. *Michel,* 957 F.2d at 191 ("To the extent that Cruz differs with this holding, we think that it does not survive Miles.").

8. *Id.* at 75 citing *Breland v. Western Oceanic, Inc.,* 755 F.Supp. 718 (W.D.La.1991); *Anglada v. Tidewater, Inc.,* 752 F.Supp. 722 (E.D.La.1990); *Turley v. Co–Mar Offshore Marine Corp.,* 766

F.Supp. 501 (E.D.La.1991). Note, however, that unlike Rebstock, all of these "cases involved a Jones Act claim by the injured seamen against the seaman's employer combined with claims for unseaworthiness under the general maritime law." Id. at 75 n. 1.

9. The court relied on *Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 386 (5th Cir.1985), a pre-*Miles* case in which the Fifth Circuit allowed an injured seaman's spouse asserting a general maritime law negligence claim against a third party to recover damages for loss of consortium.

dant's improper installation of a moon pool and cover. *Id.* at 456. On the third-party defendant's motion for partial summary judgment, the district court held that the family of a deceased Jones Act seaman may recover nonpecuniary damages from a nonemployer defendant in a general maritime law wrongful death action. *Id.* at 457.

After a brief review of maritime wrongful death actions and *Miles'* focus on the need for uniformity in admiralty, the court found that *Miles* did not reach the instant issue of nonemployer third-party liability for nonpecuniary damages. *Id.* The court noted that prior to *Miles,* in *Sea–Land Services, Inc. v. Gaudet,* the Supreme Court permitted a longshoreman's dependent to recover nonpecuniary damages, including loss of society, suffered as a result of a wrongful death in territorial waters under the general maritime law. *Id.* at 456. The *Sugden* court recognized that *Miles* eliminated the recovery for loss of society in a general maritime action for wrongful death of a Jones Act seaman. *Id.* Nevertheless, the district court ruled that because a nonemployer owes a duty of reasonable care under the circumstances to the employee of a third party, and because no third-party suits can be brought under the Jones Act, the duty of care applies without regard to the decedent's status as a Jones Act seaman. *Id.* at 457. Thus, the court held the principles of *Miles* do not apply and *Gaudet* controls. *Id.* In effect, the court in *Sugden* allowed the decedent plaintiff to shirk his true seaman status with respect to a third party in order to assure nonpecuniary recovery.

Based on the foregoing, it is clear that some district courts would read Miles narrowly to bar nonpecuniary damages only against an employer in general maritime unseaworthiness claims. *See Rebstock v. Sonat Offshore Drilling,* 764 F.Supp. 75 (E.D.La. 1991); *Sugden v. Puget Sound Tug & Barge Co.,* 796 F.Supp. 455 (W.D.Wash.1992). Other courts, however, would read *Miles* broadly, reasoning that the sweeping language in *Miles* addressing nonpecuniary claims serves as a clear and unambiguous decree against such remedies for Jones Act seamen. *See Carnival Cruise Lines v. Red Fox Industries, Inc.,* 813 F.Supp. 1185, 1187 (E.D.La. 1993); *Ellender v. John E. Graham & Co.,* 821 F.Supp. 1136 (E.D.La.1992). This split in authority is problematical to all parties involved because it fails to promote the purposes underlying the uniformity doctrine.

■ Despite the foregoing split in authority, this court feels compelled by the broad language in *Miles* which states that "today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law" as well as the Fifth Circuit's extension of *Miles* to **GRANT** Poseidon's Motion for Partial Summary Judgment.

This court would be less inclined to apply *Miles* under the present facts if the Supreme Court had not included DOSHA in its analysis. DOSHA is obviously not restricted to an action against the employer, thus creating the present confusion. Therefore, to achieve the "uniformity" sought in *Miles,* at least viz-a-viz, DOSHA and the Jones Act, it would seem that employers and non-employers should be treated the same as to non-pecuniary damages.

The sea of non-pecuniary damages in maritime law is, indeed, difficult to navigate. If one happens to be a seaman, but institutes a suit for a maritime tort not pursuant to the Jones Act, is he precluded from recovering non-pecuniary damages? If one is not a seaman, and has a cause of action under the general maritime law, is he precluded from such recovery? *See Sutton v. Earles,* 26 F.3d 903 (9th Cir.1994)[10]; *See also Walker v. Braus,* 861 F.Supp. 527 (E.D.La.1994).[11]

---

**10.** In *Sutton,* the Ninth Circuit held that non-seaman can recover loss of society damages distinguishing the situation of a seaman by pointing out that "[t]he death of a seaman in territorial waters leads to recovery only of pecuniary damages is dictated by statute and that statute does not limit recoveries for the death of non-seaman." *Id.* at 917.

**11.** In *Walker,* Judge Heebe held that loss of society damages are unavailable in a general maritime wrongful death action involving the operator of a fishing boat within state territorial waters. *Id.* at 538.

Did Congress intend to do away with all non-pecuniary damages in all maritime causes of action when it enacted DOSHA and the Jones Act?

Pursuant to 28 U.S.C. § 1292(b)[12], this court finds that there is substantial ground for difference of opinion and that an interlocutory appeal would materially advance the ultimate termination of this litigation.

Considering the foregoing,

**IT IS ORDERED** that Poseidon's Motion for Partial Summary Judgment on the issue of the recovery of loss of society damages is hereby **GRANTED** and a **1292(b) CERTIFICATE** is included.

12. Section 1292(b) provides:
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order **involves a controlling question of law as to which there is substantial ground for difference of opinion** *and* **that an immediate appeal from the order may materially advance the ultimate termination of the litigation,** he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application make to it within ten days after the entry of the order: *provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.. (emphasis added).