**Teodoro C. ZUNIGA, Plaintiff,**

v.

**TMF, INC., Defendant.**

**No. CIV.A. 2:02CV879.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 5, 2003.

---

**23.** *See Huthwaite, Inc. v. Sunrise Assisted Living, Inc.,* Civil Action No. 02–1478–A (March 14, 2003) (Order).

Ralph Rabinowitz, Esq., Rabinowitz Rafal Swartz Taliaferro & Gilbert PC, Norfolk, for Plaintiffs.

David Neil Ventker, Esq., Ventker & Associates PLLC, Norfolk, for Defendants.

## OPINION AND ORDER

MORGAN, District Judge.

This matter comes before the Court on the Defendant, TMF, Incorporated's, Motion for Summary Judgment (document no. 13). This is an admiralty case brought against the vessel owner by a crewmember for personal injuries received during a voyage in November 2001. The Motion for Summary Judgment was filed on March 31, 2003 and is fully briefed. At the conclusion of a hearing on April 28, 2003, the Court ruled from the bench that the Defendant's motion would· be **GRANTED IN PART AND DENIED IN PART**. Those portions of the motion seeking summary judgment as to the Plaintiff's claims for seaworthiness and for the Jones Act negligence claim for the assault on Plaintiff are **DENIED**. That portion of the motion seeking summary judgment as to the Plaintiff's claim for maintenance is **DENIED**. Those portions of the motion seeking summary judgment as to the Plaintiff's claim for cure, for willful, arbitrary failure to pay maintenance and cure, and for delay in treating Plaintiff following the assault are **GRANTED**. This Order more fully sets forth the rationale for the Court's various rulings.

## FACTS [1]

The briefs submitted by both parties are a model for compliance with the requirements of Local Rule 56B. Accordingly, the facts admitted in the briefs are readily ascertainable.

1. These factual findings are for no purpose other than adjudicating the instant Motion for Summary Judgment.

1. Teodoro Zuniga, the Plaintiff herein, and Jeff Calvalho were hired by Capt. John Holloman to serve as members of the crew of the scallop boat CAPT. A.T. for the voyage which began on November 5, 2001. *See,* Amended Complaint at ¶ 3; Answer to Amended Complaint at ¶ 3.

2. On November 24, 2001, Calvalho and Zuniga engaged in a physical altercation with one another on board the CAPT. A.T. Calvalho struck Zuniga in the face three times, breaking Zuniga's nose. *See,* Amended Complaint at ¶ 3; Answer to Amended Complaint at ¶ 3; Plaintiff's Affidavit (attached as exhibit 11 to Plaintiff's opposition brief).[2]

3. The Defendant had adopted a rule forbidding illegal drugs, including marijuana, on board the CAPT. A.T. *See,* F/V CAPT. A.T. Departure Agreement (copy attached as exhibit 1 to Plaintiff's opposition brief).

4. Captain Holloman and the Mate knew that Calvalho smoked marijuana every day during the voyage[3], was limited to 4–5 hours of sleep per day during the voyage (similar to the other members of the crew), and was under pressure from the Captain and the Mate to work harder. *See,* Plaintiff's Affidavit (attached as exhibit 11 to Plaintiff's opposition brief); Plain-tiff's Answer to Defendant's Interrogatory no. 10 (attached as exhibit A to Defendant's opening brief).

5. Captain Holloman has known Calvalho for a number of years. In that time, Captain Holloman has never known Calvalho to be a violent person. Captain Holloman has neither witnessed nor heard from others that Calvalho has engaged in an act of violence against another person. *See,* John Holloman affidavit at ¶ 6 (attached as exhibit E to Defendant's opening brief).

6. After the altercation between Zuniga and Calvalho, Capt. Holloman brought the CAPT. A.T. to Newport News, Virginia so that Zuniga could receive medical attention. *See,* John Holloman affidavit at ¶ 5 (attached as exhibit E to Defendant's opening brief).

7. Zuniga lives in Hampton, Virginia. *See,* Plaintiff's Answer to Defendant's Interrogatory no. 1 (attached as exhibit A to Defendant's opening brief).

8. Zuniga wanted Capt. Holloman to take him to Cape May, New Jersey for medical care. *See,* Plaintiff's Answer to Defendant's Interrogatory no. 15 (attached as exhibit A to Defendant's opening brief); *see also,* Plaintiff's Affidavit ("First the Captain agreed to take me to Cape May,

2. The parties dispute the number of blows that Calvalho delivered to Zuniga's face. Relying on the Amended Complaint at ¶ 3 and the Plaintiff's Affidavit (proffered as exhibit 11 to the Plaintiff's Opposition Brief), the Plaintiff contends that Calvalho struck him three times. The Defendant argues that Calvalho hit Zuniga one time. Answer to Amended Complaint at ¶ 3. The Court views the evidence, and the inferences flowing therefrom, in the light most favorable to the non-moving party. The Court therefore adopts the Plaintiff's view of the evidence regarding the number of blows that were struck.

3. The Defendant argued on brief and at the hearing that there is no evidence to suggest that Calvalho was under the influence of marijuana at the time of the altercation. The Plaintiff in his Affidavit (proffered as exhibit 11 to the Plaintiff's Opposition Brief), however, states that Calvalho "was under the influence of marijuana" at the time when the fight occurred. There is no record evidence to the contrary and the Plaintiff is entitled at this stage of the proceedings to have the evidence viewed in the light most favorable to him. The Court, therefore, rejects the Defendant's argument and FINDS (for the purposes of adjudicating the summary judgment motion) that Calvalho was under the influence of marijuana at the time of the altercation.

but later said, 'I can't take you to Cape May, we are going to Newport News.'") (attached as exhibit 11 to Plaintiff's opposition brief). *Contra,* John Holloman affidavit at ¶ 4 (attached as exhibit E to Defendant's opening brief).[4]

9. The transit to Newport News required four hours beyond the amount of time that would have been required to reach Cape May. *See,* John Holloman affidavit at ¶ 1 (attached as exhibit E to Defendant's opening brief).

10. Zuniga was examined and treated in the emergency room at Sentara Hampton General Hospital on November 25, 2001, and was diagnosed as suffering from displaced depressed fractures of the nose and contusions about the nose, and was referred to ENT surgeon, Dr. Leo Carter. *See* Sentara Hampton General emergency room records of November 25, 2001 (attached as exhibit G to Defendant's opening brief and as exhibit 12 to Plaintiff's opposition brief).

11. Zuniga first saw Dr. Carter on November 28, 2001. On December 4, 2001, Dr. Carter surgically realigned the nose.

*See,* Dr. Carter's patient records (attached as exhibit H to Defendant's opening brief & as exhibit 13 to Plaintiff's opposition brief).

12. Dr. Carter told Zuniga not to work while the doctor was treating him. *See,* Plaintiff's affidavit (attached as exhibit 11 to Plaintiff's opposition brief).[5]

13. The Defendant has paid all of Zuniga's medical expenses for the injury arising out of the altercation with Calvalho. *See,* Tim Daniels affidavit at ¶ 6 (attached as exhibit C to Defendant's opening brief); David Husbands affidavit at ¶ 2 (attached as exhibit D to Defendant's opening brief).

14. Zuniga's living expenses during the two months that he was out of work following his injury were as follows: (1) $160.00 per month for rent; (2) $80.00 per month for gas and electricity; and, (3) $300.00 per month for groceries. *See,* Plaintiff's affidavit (attached as exhibit 11 to Plaintiff's opposition brief).[6]

## STANDARD OF REVIEW

District courts may enter summary judgment only when there is no genuine

---

4. The Defendant argues that Captain Holloman wanted to put in at Cape May because the CAPT A.T. could reach that port four hours sooner, as compared to the longer transit to Newport News. The Defendant quite plausibly suggests that Captain Holloman preferred the closer port, Cape May, because of reduced fuel costs and reduced interruption in fishing time. According to Captain Holloman, however, he acquiesced to the Plaintiff's desire to "go home to Newport News". Because the case is at the summary judgment stage, the Court resolves the evidentiary conflict in the Plaintiff's favor because the Plaintiff is the non-moving party.

5. The Defendant disputes this factual finding by observing that Dr. Carter's patient records contain no entry indicating that Zuniga was restricted from work. The assertion in Zuniga's affidavit that Dr. Carter told him to stay home from work is couched in somewhat equivocal language ("I believe Dr. Carter told

me . . ."). The Defendant implies a charge of recent fabrication, noting that prior to service of his affidavit on Defendant on April 7, 2003, Plaintiff never before claimed that his physician advised him to stay home from work. The Plaintiff has proffered some evidence to support his contention that Dr. Carter instructed him to take time off from work which, at this stage of the proceedings, is all that is required of the non-moving party.

6. The Defendant questions the accuracy of these numbers, contending that this data should have been delivered much earlier in the proceedings and that the Plaintiff has furnished no receipts to substantiate the cost figures. *See,* David Husbands affidavit at ¶ 3 (attached as exhibit D to Defendant's opening brief). The Plaintiff's affidavit is a proffer of some evidence to establish the amount of his living expenses which, at this stage of the proceedings, is all that is required of the non-moving party.

issue of material fact and the movant is entitled to judgment as a matter of law. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir.1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in the pleadings." *Doyle v. Sentry Insur.,* 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue, "there is 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

### ANALYSIS

The Plaintiff's Amended Complaint at ¶ 5 alleges five claims against the vessel owner: (1) breach of the warranty of seaworthiness; (2) Jones Act negligence for the assault on the Plaintiff; (3) failure to provide maintenance and cure; (4) willful, arbitrary failure to pay maintenance and cure (which gives rise to damages that include a reasonable attorney's fee); and, (5) Jones Act negligence for delay in treating Plaintiff following the assault.

### The Seaworthiness Claim

Seaworthiness is a doctrine of the general maritime law. Pursuant to the seaworthiness doctrine:

> a ship owner owes the seaman an absolute, non-delegable duty to provide a seaworthy vessel. *See Mitchell v. Trawler Racer,* 362 U.S. 539, 549–50, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960) (seaworthiness is defined as a vessel that has a hull and equipment that are reasonably adequate in design and maintenance, and a crew that is of sufficient character to perform its intended function in the operation of the vessel). Liability for violation of the doctrine of seaworthiness is without fault. *See id.*

*Chisholm v. UHP Projects,* 205 F.3d 731, 734 (4th Cir.2000). To succeed in a claim for unseaworthiness, a plaintiff must show that "the unseaworthy condition of the vessel was the proximate or direct and substantial cause of the seaman's injuries." *Hernandez v. Trawler Miss Vertie Mae,* 187 F.3d at 439 (4th Cir.1999) (citing *Gosnell v. Sea–Land Serv.,* 782 F.2d 464, 467 (4th Cir.1986)). Thus stated, the seaworthiness doctrine places a large responsibility for the seaman's safety on the vessel owner. It is a species of liability without fault—a warranty. The focus of analysis is the condition of the ship. *See, generally,* Annotation, *Liability Under Jones Act or Seaworthiness Doctrine for Injuries Caused by Assault,* 22 A.L.R.3d 624 (2002); Unseaworthiness, 1B Benedict on Admiralty § 23.

 The landmark case interpreting the seaworthiness doctrine for the situation where, as here, a crewmember is injured in an altercation with one of his fellows is *Jones v. Lykes Bros. Steamship*

*Co.,* 204 F.2d 815 (2nd Cir.1953). The standard in that case was given by Judge Learned Hand as follows:

> The warranty is indeed unconditional, as is the warranty of the ship herself and her gear; but it means, as we said, not that a "seaman is competent to meet all contingencies; but that he is equal in disposition and seamanship to the ordi- nary men in the calling." All men are to some degree irascible; every workman is apt to be angry when a fellow com- plains of his work to their common supe- rior; and some will harbor their resent- ment and provoke a quarrel over it even after the lapse of several hours. Sailors lead a rough life and are more apt to use their fists than office employees; what will seem to sedentary and protected persons an insufficient provocation for a personal encounter, is not the measure of the "disposition" of "the ordinary men in the calling."

*Id.* at 817; *see also, Miles v. Melrose,* 882 F.2d 976 (5th Cir.1989), *aff'd., Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).[7]

The Defendant contended on brief and at the hearing that the Plaintiff's failure to argue the seaworthiness claim in the oppo- sition brief means that the Plaintiff has waived the seaworthiness claim. The con- tention is misplaced because the Defen- dant, as the movant, still bears the burden of establishing that the admitted facts enti- tle it to summary judgment as a matter of law. "In considering a motion for sum- mary judgment, [the court] must review the motion, even if unopposed, and deter- mine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer v. Pan American Life Ins. Co.,* 12 F.3d 410, 416 (4th Cir.1993).

■ Turning to the merits of the sea- worthiness claim, the Plaintiff proffered no direct evidence to indicate that Calvalho possessed a vicious nature, had a reputa- tion for violence, or that he had a criminal record for acts of violence. The only di- rect evidence in the record concerning Cal- valho's predisposition for violence is the affidavit submitted by Captain Holloman, which attests that Calvalho is a peaceful person. (*See,* Fact no. 5.) The Plaintiff has proffered evidence, however, that the Cap- tain and the Mate knew Calvalho smoked marijuana each day during the voyage and that this conduct was undertaken in viola- tion of a ship rule forbidding illegal drugs, including marijuana, on board the vessel. (*See* Fact nos. 3 & 4.) The Court infers that the Defendant put the rule in place to ensure that the crew was fit for its duty at sea. The Plaintiff has further proffered evidence that Calvalho was under the in- fluence of marijuana at the time of the altercation. (*See* Fact no. 4.) The Plain- tiff's evidence, if believed, suggests that

---

**7.** A ship is unseaworthy unless it and all of its appurtenances and crew are reasonably fit and safe for their intended purpose. The shipowner has an absolute duty to provide the members of his crew with such a seaworthy vessel, an obligation not dependent on fault. Just as a dangerous mast, a defective line, or a damaged hull may render a vessel unsea- worthy, so may a seaman who is not reason- ably fit. To establish such unseaworthiness, a plaintiff must prove that the crewmember was not "equal in disposition and seamanship to the ordinary men in the calling." Under this standard a crew member who participates in an "ordinary sailors' brawl" is not per se unfit; the rigors of work at sea for long peri- ods of time in the close confines of a vessel may lead not only to quarrels but to physical challenges .... A seaman is not unfit merely because he is irascible; he fails to meet the seaworthy standard only if he possesses a savage and vicious nature.

*Miles v. Melrose,* 882 F.2d 976, 981 (5th Cir. 1989), *aff'd., Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) (footnotes omitted).

Calvalho was impaired from usage of an illegal drug and that this impairment caused the Plaintiff's injury.[8] The Plaintiff's proffer therefore establishes a *prima facie* case on the seaworthiness claim. The Defendant's motion for summary judgment is DENIED as to the seaworthiness claim without prejudice to the Defendant's ability to renew the motion at the close of the Plaintiff's evidence at trial (if the Defendant be so advised).

### The Jones Act Negligence Claim for the Assault on Plaintiff

Under the Jones Act, liability for injuries from assault may be based on two different theories: (1) the direct negligence theory; and, (2) vicarious liability for the assault itself. Direct negligence is typically predicated upon negligent hiring (or retaining) of a violent crewmember or on other negligent acts attributable to the vessel owner in the manner that it managed the vessel or the crew. The vicarious liability theory is available in those situations where the assailant injures the victim during an assault committed in furtherance of the vessel owner's business. *See, generally,* Annotation, *Liability Under Jones Act or Seaworthiness Doctrine for Injuries Caused by Assault,* 22 A.L.R.3d 624 (2002); Negligence, 1B Benedict on Admiralty § 21.

The Plaintiff does not argue vicarious liability. Instead, his Jones Act negligence claim is based on two negligent acts attributable to the vessel owner in the manner that it managed the vessel or the crew. First, the Plaintiff argues that the vessel owner deprived Calvalho of adequate sleep, applied pressure on Calvalho to work harder, and allowed Calvalho to smoke marijuana on a daily basis. The Plaintiff contends that these factors, singly or in combination, induced Calvalho to attack the Plaintiff. Second, the Plaintiff argues the Defendant was negligent for its failure to enforce the ban on illegal drug usage aboard the ship.

"[T]o prevail on a Jones Act negligence claim against his employer, a seaman must establish (1) personal injury in the course of his employment; (2) negligence by his employer or an officer, agent, or employee of his employer; and (3) causation to the

8. The Plaintiff proffers his own lay opinion that Calvalho's drug usage, sleep deprivation, and the pressure from the Captain and Mate *to work harder, singly or in combination,* caused Calvalho to attack the Plaintiff. *See,* Plaintiff's Affidavit (attached as exhibit 11 to Plaintiff's opposition brief). The Defendant argued that the Court should disregard the Plaintiff's lay opinion. FED. R. EVID. 701 permits a lay witness to give an opinion if it (a) is rationally based on the observation of the witness, (b) explains the witness' testimony or is probative of a fact in issue, and (c) is not based on scientific, technical or other specialized knowledge within the scope of FED. R. EVID. 702. If the requirements of the rule are satisfied, the evidence should usually be admitted. *See, Mattison v. Dallas Carrier Corp.,* 947 F.2d 95, 110 (4th Cir.1991) (lay opinion admitted into evidence at trial). Conversely, lay opinions should be disregarded when they are "meaningless assertions which amount to little more than choosing up sides." FED. R. EVID. 701, Advisory Committee Notes (accompanying the 1972 proposed rules); *see also, U.S. v. Gould,* 741 F.2d 45, 51 n. 6 (4th Cir.1984) (lay opinion excluded). Although the persuasive force associated with the Plaintiff's lay opinion is at this stage of the proceedings unclear, the Court concludes that the Plaintiff's lay opinion should be admitted into the summary judgment record. At the time when the altercation occurred, the Plaintiff and Calvalho had been living and working together in close quarters aboard the CAPT A.T. for approximately three weeks. Plaintiff thus had acquired first-hand knowledge of Calvalho's habits and disposition. That the Plaintiff's opinion was produced from "a process of reasoning familiar in everyday life", *see* FED. R. EVID. 701, Advisory Committee Notes (accompanying the 2000 amendments), counsels toward admissibility.

extent that his employer's negligence was the cause 'in whole or in part' of his injury." *Hernandez v. Trawler Miss Vertie Mae,* 187 F.3d 432, 436 (4th Cir.1999) (citing *Gautreaux v. Scurlock Marine,* 107 F.3d 331, 335 (5th Cir.1997)).

■ The Plaintiff's claim regarding the combination of factors that caused Calvalho to attack the Plaintiff was set forth in the previous section of this Order concerning the seaworthiness claim. The evidence proffered by the Plaintiff regarding Calvalho's illegal drug usage, the Master's condonation of that drug usage, the sleep limitations, the pressure that the Master applied to Calvalho to work harder, and the Plaintiff's lay opinion on causation, together, establishes a *prima facie* case of Jones Act negligence.

■ The Plaintiff's secondary claim of Jones Act negligence is based on the Master's failure to enforce the ship's rule banning illegal drugs, a claim of first impression in this Circuit. The Circuits that have considered the question, albeit in the situation involving liquor as opposed to drugs, are divided on whether the failure to enforce the ban creates a jury question as to Jones Act negligence (when an intoxicated crewmember strikes a fellow crewman). The Second Circuit has twice held that the failure to enforce the ban creates

a jury question of Jones Act negligence. *See, Stankiewicz v. United Fruit Steamship Corp.,* 229 F.2d 580 (2nd Cir.1956); *Gerald v. United States Lines Co.,* 368 F.2d 343 (2nd Cir.1966). Conversely, the Sixth Circuit more recently affirmed a District Court that reached the opposite conclusion. *See, Kowalski v. American S.S. Co.,* 954 F.Supp. 140 (E.D.Mich.1995), *aff'd,* 103 F.3d 129 (6th Cir.1996).[9] Having considered the particular circumstances of this case, this Court believes that the approach embodied by the cases in the Second Circuit is more appropriate to the case at bar.

The Defendant's motion for summary judgment on the Jones Act negligence claim for the assault on Plaintiff is therefore **DENIED** without prejudice to the Defendant's ability to renew the motion at the close of the Plaintiff's evidence at trial (if the Defendant be so advised).

*The Claim for Maintenance and Cure*

■ When a seaman becomes ill or suffers an injury while in the service of a vessel, he is entitled to maintenance and cure at the expense of the shipowner. "Maintenance and cure provide a seaman who becomes ill or injured in the service of his ship lodging, board, and medical expenses until he reaches maximum recovery." *Williams v. Kingston Shipping Co.,*

---

**9.** *Kowalski* is a maritime case where a seaman was injured following an altercation with another crewmember. The evidence in that case was that the assailant "had a history of drug and alcohol abuse." *Id.* at 142. The assailant in that case "was known to have a substance abuse problem, but he had not previously exhibited violent behavior, even when under the influence of alcohol or other drugs." *Id.* at 143. The Court in *Kowalski* drew a distinction between the tendency to abuse alcohol and illegal drugs and the tendency toward violence. The Court reasoned that

the evidence at trial showed that Herold drank and used illegal drugs and even that

the defendant had reason to know that Herold did so. There was no evidence, however, that Herold had ever committed a violent act against one of his shipmates or anyone else. Thus, there was no evidence to suggest that the defendant had notice, actual or constructive, that Herold's drunkenness and drug abuse would result in the risk or peril of a shipboard assault. Accordingly, Defendant is entitled to judgment as a matter of law.

*Id.; see also, Taranto v. Nes,* 1997 A.M.C. 2048, 2057 (Ala.Super.Ct.1997) ("The vast majority of persons who drink do not commit assaults, and the Movants had no basis to know that John Nes was an exception.").

925 F.2d 721, 723 (4th Cir.1991); *see, generally,* Maintenance and Cure, 1B Benedict on Admiralty § 42. The Plaintiff must establish three elements: (1) show he was a seaman; (2) show he became ill or was injured while in the service of the ship; and, (3) show expenses for medicine, treatment, or lodging.

Fact numbers 1, 2, 10 & 11 satisfy the first two elements of the Plaintiff's *prima facie* case. The Defendant has already paid the Plaintiff's medical expenses, *see* Fact number 13, but has not paid the Plaintiff's expenses for maintenance. The Plaintiff has established a *prima facie* case that he is entitled to maintenance, *see* Fact no. 12, and that he has incurred maintenance expenses, *see* Fact no. 14.

It appearing to the Court that the Plaintiff has proffered sufficient evidence to establish a *prima facie* case for maintenance, the Defendant's motion for summary judgment as to the claim for cure is GRANTED and as to the claim for maintenance is DENIED.

*Claim for Willful, Arbitrary Failure to Pay Maintenance and Cure*

Citing a treatise, Plaintiff argues in his brief that the Defendant is liable for consequential damages for its failure to timely pay maintenance and cure. *See,* Plaintiff's opposition brief at page 9. In the amended complaint, the Plaintiff alleges the Defendant intentionally and recalcitrantly failed to provide maintenance and cure. *See,* Amended Complaint at ¶ 5. The Plaintiff contends that the Defendant must pay the Plaintiff's attorney's fees as a result of the alleged breach. *Id.* At the hearing, Counsel for Plaintiff conceded the Defendant has paid cure but asserted that a willful failure to pay maintenance requires the Defendant to pay both the maintenance and also the Plaintiff's attorney's fees.

■ If the shipowner unreasonably refuses to pay a seaman's claim for maintenance and cure, the seaman may recover consequential damages, including lost wages, pain and suffering, and attorney's fees and costs. *See Deisler v. McCormack Aggregates,* 54 F.3d 1074, 1084–85, 1087 (3rd Cir.1995); *see also, Sims v. U.S. War Shipping Admin.,* 186 F.2d 972, 973–74 (3rd Cir.), *cert. denied,* 342 U.S. 816, 72 S.Ct. 31, 96 L.Ed. 617 (1951). The Plaintiff proffered evidence that his Counsel sent several letters to the Defendant in which it was contended that the Plaintiff was entitled to receive maintenance. However, as was conceded by Plaintiff's Counsel in open court during the hearing, the Plaintiff tendered no evidence prior to April 2003 that his doctor had advised him to remain off work for a period of time following the injury. Moreover, it was not until April 2003 that the Plaintiff tendered any evidence to the Defendant concerning his expenses for maintenance. All of the evidence in this regard was submitted to the Defendant as assertions in the Plaintiff's affidavit, accompanying the Defendant's opposition brief that was filed in this Court on April 7, 2003.

■ It appears to the Court that the Plaintiff did not perfect his "claim" for maintenance prior to April 7, 2003. The prior correspondence that Counsel for Plaintiff sent to the Defendant was deficient because it lacked any evidence that the Defendant had been medically excused from work. Also not found in the correspondence of Counsel for Plaintiff was any evidence establishing the Defendant's purported costs of maintenance. As a matter of law there can be no recalcitrant failure to pay under these circumstances. The Court therefore will GRANT the Defendant's motion for summary judgment as to the Plaintiff's claim for willful, arbitrary failure to pay maintenance and cure.

*The Jones Act Negligence Claim for Delay in Treating Plaintiff Following the Assault*

In the aftermath of the altercation, Jones Act negligence can be found in those situations where there is "negligence in the ministration of maintenance and cure." *See, Central Gulf Steamship Corp. v. Sambula*, 405 F.2d 291, 299 (5th Cir.1968). The Plaintiff argues that the Defendant delayed Plaintiff's access to medical treatment by declining to arrange a helicopter evacuation of the Plaintiff from the ship following the injury. The Plaintiff argues further that the Defendant delayed Plaintiff's access to medical treatment by some four hours when the Defendant put in at Newport News instead of Cape May. The Plaintiff proffers no evidence to show that the purported delay caused any harm.

The U.S. Supreme Court set forth the following standard in a case where the ship's delay of numerous weeks in putting into port interfered with a crewmember's recovery from a shipboard injury, leading to the amputation of his leg:

> Each case must depend upon its own circumstances, having reference to the seriousness of the injury, the care that can be given the sailor on shipboard, the proximity of an intermediate port, the consequences of delay to the interests of the shipowner, the direction of the wind and the probability of its continuing in the same direction, and the fact whether a surgeon is likely to be found with competent skill to take charge of the case. With reference to putting into port, all that can be demanded of the master is the exercise of reasonable judgment and the ordinary acquaintance of a seaman with the resources and geography of the country. He is not absolutely bound to put into such port if the cargo be such as would be seriously injured by the delay. Even the claims of humanity must be weighed in a balance with the loss that would probably occur to the owners of the ship and cargo. A seafaring life is a dangerous one, accidents of this kind are peculiarly liable to occur, and the general principle of law that a person entering a dangerous employment is regarded as assuming the ordinary risks of such employment is peculiarly applicable in the case of seaman.

> To judge the propriety of the master's conduct in a particular case we are bound so far as possible to put ourselves in his place, and inquire whether, in view of all the circumstances, he was bound to put into an intermediate port.

*The Iroquois*, 194 U.S. 240, 243, 24 S.Ct. 640, 48 L.Ed. 955 (1904).

The Plaintiff in the instant case suffered a broken nose and a cut on his forehead which did not require sutures. The Defendant had every right to evaluate the circumstances, including the relatively minor nature of plaintiff's injury, and to determine which port was acceptable. The Plaintiff proffered no evidence that the Master's decision to put in at Newport News was an unreasonable one. The Defendant's motion for summary judgment as to the Jones Act negligence claim for delay in treating plaintiff following the assault is therefore GRANTED.

## CONCLUSION

For the aforementioned reasons, the Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Those portions of the motion seeking summary judgment as to the Plaintiff's claims for seaworthiness and for the Jones Act negligence claim for the assault on Plaintiff are DENIED. That portion of the motion seeking summary judgment as to the Plaintiff's claim for maintenance is DENIED. Those portions of the motion seeking sum-

mary judgment as to the Plaintiff's claim for cure, for willful, arbitrary failure to pay maintenance and cure, and for delay in treating Plaintiff following the assault are GRANTED.

The Clerk is REQUESTED to send a copy of this order to all counsel of record.

It is so ORDERED.