United States Court of Appeals,

Fifth Circuit.

No. 92-5133

Summary Calendar.

John R. NICHOLS and Irene Nichols, et al., Plaintiffs,

v.

PETROLEUM HELICOPTERS, INC., et al., Defendants.

Jimmie John MILLER, Jr., and Jolain Miller, Plaintiffs-Appellants,

v.

PETROLEUM HELICOPTERS, INC., et al., Defendants-Appellees.

July 14, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before HIGGINBOTHAM, SMITH and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

In this consolidated case arising in admiralty, Miller brought suit against Petroleum Helicopters, Inc. (PHI) for injuries allegedly sustained in a helicopter crash in the Gulf of Mexico on July 14, 1988. Following the defendant's pre-trial stipulation of liability, the only issue at trial was damages. The sole legal question was whether the plaintiff's wife (Jolain Miller) had a claim for loss of consortium under general maritime law. The court held that damages for loss of consortium were not recoverable under general maritime law but awarded Miller $12,000 for general damages and $2,569.13 for economic loss. The Millers appeal the court's awards, the findings of fact upon which they were based, and its holding that loss of consortium was not cognizable under general maritime law. This Court affirms.

## I. Background

On June 4, 1988, Jimmie Miller, an employee of Forest Oil Company, was enroute with other crew members to an oil platform in the Gulf of Mexico. The PHI helicopter they were travelling upon crashed in Vermilion Block 255B, eighty miles from shore, killing one crew member. Six of the

helicopter occupants filed personal injury actions which were consolidated; only the present one was litigated.

Prior to trial, PHI stipulated to liability and Miller waived claims for punitive damages. The issue before the District Court for the Western District of Louisiana was the amount of Miller's damages for physical and emotional suffering, and for economic loss. Miller claimed the accident caused two ruptured discs which led to anterior lumbar fusion surgery and which left him "permanently disabled" from heavy labor.

The court's damage assessment was complicated by two factors. First, Miller had been employed in an extremely heavy manual labor occupation which had caused a history of physical problems and had led to repeated medical treatments. Second, there was evidence to show that, as early as 1983, "hereditary arthritic changes had already begun ... and therefore were not caused by the accident." As a result, the threshold question was whether the helicopter crash was the sole cause of Miller's injuries or whether it merely aggravated pre-existing problems. The same causation analysis was necessary for the emotional suffering claim as Miller had abused both drugs and alcohol in the past.

The court concluded that the preponderance of the evidence did not show the plaintiff had suffered a herniated disc as a result of the accident. At worst, the crash caused merely a back strain and pain due to a pre-existing osteoarthritic condition. The court decided that the pain the plaintiff had suffered would be adequately compensated by $9,000.

The conclusion that the accident caused a mere back strain was also dispositive of the court's award for economic loss. The court awarded one month's lost wages because it believed Miller's long term physician who seemed to have felt Miller could soon return to work. As the court noted, this evaluation was substantiated by all the orthopedists and neurologists that examined Miller but one. All these findings and awards were greatly influenced by the court's apparent questioning of Miller's credibility as a witness.

As to Miller's claim of psychological damage, the court found that the evidence was again far from clear as to the cause of Miller's problems. The court noted Miller's pre-accident substance

abuse, beginning in high school and continuing while he worked for Forest Oil, and his short stay in a detoxification program after the accident. Though causation of all Miller's mental problems was tenuous, the court found that some depression was independently caused by the accident. Accordingly, the court awarded $3,000.

## II. Damage Findings

We begin by noting that the clearly erroneous standard of review guides our inquiry into all findings of fact, including damage awards. *See, Graham v. Milky Way Barge, Inc.,* 824 F.2d 376, 389 (5th Cir.1987). Such awards will not be disturbed unless "we are convinced that an error has been committed." *Id.* at 389-90. *See, United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948), *reh'g den'd* 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147 (holding that fact findings are reversed only where "clearly erroneous"). Furthermore, "*[m]ere disagreement with the district court's analysis of the record is insufficient,* and we will not reverse ... [a finding] "although there is evidence to support it, [unless] the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Milky Way,* at 388 (citing *Gypsum,* 333 U.S. at 395, 68 S.Ct. at 542) (emphasis added).

Miller argues, essentially, that the court twisted Miller's statements to the doctors out of context or deliberately ignored the evidence. This charge is evidenced by Miller's dissection and refutation in his brief of every single finding by the district court. Perhaps, the court may have mislabelled the crash a "forced landing" and misstated the nature of Miller's injuries in a prior car accident. In our view, however, the evidence as a whole supports the court's findings and a few factual errors or omissions does not change that.

With evidence to support the court's findings, we may only reverse if we are left with a "definite and firm conviction" of error. In the present case, the district court concluded that Miller was not credible in any of his assertions, whether to the court or to the doctors. Miller implies by his laundry list of factual discrepancies or "omissions" that the court would not have reached this credibility assessment but for its pervasive errors in findings. As we have said before, "this Court should be wary of attempting to second guess the district court, which has the decided advantage of

first hand experience concerning the testimony and evidence presented at trial." *Milky Way,* at 388. Following this sound advice and upon review of the record, this Court cannot say that it has a "definite and firm conviction" that error has been committed. The district court was under no obligation to accept Miller's justifications and explanations once it concluded that Miller was not credible. The evidence does not show that either this assessment or the fact findings was clearly erroneous. As a result, the damage awards which were predicated upon these findings cannot be an abuse of discretion.

### III. Loss of Consortium

The recoverability of damages for loss of consortium is a legal question that is reviewable *de novo. Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Michel v. Total Transp., Inc.,* 957 F.2d 186, 191 (5th Cir.1992).

Miller claims that the district court erred in finding general maritime law precluded a claim for loss of consortium. Miller recognizes that *Miles v. Apex Marine Corp.,* 498 U.S. 19, 32-33, 111 S.Ct. 317, 326, 112 L.Ed.2d 275 (1990), prevents such a claim in a seaman's wrongful death suit and that this rule has been extended by our Court to apply to seamen's personal injury suits also.[1] He argues, however, that in a case involving a non-seaman, or longshoreman such as himself, recovery for loss of consortium may still be had under *Sea-Land Services, Inc. v. Gaudet.*[2]

Assuming that Miller is a longshoreman, his reading of *Gaudet* omits one crucial point. After *Miles,* longshoremen can recover for loss of consortium only if injured in territorial waters. The Supreme Court declared that the "holding in *Gaudet* applies *only in territorial waters,* and it applies only to longshoremen." *Miles,* 498 U.S. at 31, 111 S.Ct. at 325 (emphasis added). This Court has concurred and found that *Miles* limited *Gaudet* to its narrow facts. *Murray,* 958 F.2d at 130, ("*Miles* specifically limited *Gaudet* ... to its facts"). It is uncontested in this case that the injuries of which

---

[1] *See, Michel v. Total Transportation, Inc.,* 957 F.2d 186, 191 (5th Cir.1992); and *Murray v. Anthony J. Bertucci Construction Co., Inc.,* 958 F.2d 127 (5th Cir.1992).

[2] 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). *Gaudet* involved the death of a longshoreman in territorial waters; and the Supreme Court held that the decedent's wife could recover for loss of consortium.

Miller complains were the result of a casualty occurring some 80 miles off the Louisiana coast. Miller's claim fails to satisfy one of the two equally important requirements of *Gaudet* as limited by *Miles;*[3] and it must, therefore, fail.

We therefore find that the district court was not clearly erroneous in its findings on damages or in its decision to dismiss the loss of consortium claim. We also find no abuse of discretion in the damage awards.

We AFFIRM.

---

[3]The helicopter crash occurred outside territorial waters in the Gulf of Mexico. In their brief, appellants themselves describe the location of the crash as "in the Gulf of Mexico ... in Vermilion Block 255B, approximately eighty (80) miles from shore."