**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-14009

————————————

AFFORDABLE HOUSING GROUP, INC.,
as Agent of the Federal Deposit Insurance Corporation,
as Manager of the FSLIC Resolution Fund,
successor in interest to the Resolution Trust Corporation,

*Plaintiff-Counter Defendant-Appellee,*

*versus*

FLORIDA HOUSING AFFORDABILITY, INC.,

*Defendant-Counter Claimant-Appellant,*

FEDERAL DEPOSIT INSURANCE CORPORATION,

*Counter Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00495-RBD-DCI

————————————

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

ED CARNES, Circuit Judge:

In the wake of the savings and loan crisis of the 1980s Congress created the Resolution Trust Corporation (RTC), a government owned corporation, in 1989. *See* Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) of 1989, Pub. L. No. 101–73, § 501, 103 Stat. 363, 369 (creating the RTC and codifying it at 12 U.S.C. § 1441a(b) (repealed 2010)). The RTC's mission included managing and liquidating assets, such as real estate mortgages, that were held by insolvent savings and loan companies. In order to make affordable housing more available to lower income people, the legislation setting up the RTC authorized it to enter into affordable housing agreements. In those agreements the RTC would sell multifamily rental housing units at a discount price in return for the purchaser's contractual promise to, among other things, rent a specified percentage of the units below market price to lower income people. The purchaser's obligation to do that would last for a period of years set out in the contract.

This case arises because a purchaser of one of those RTC multifamily properties at a steep discount, having gotten its substantial benefit from the bargain, has quit living up to its end of the deal, insisting that it no longer has to continue renting any of the

housing units below market price to anyone even though the agreed upon term of 40 years has yet to run.[1]

The successor agency to the RTC believes the purchaser is still bound to the terms of the housing agreement it entered into, so did the district court, and so do we.

## I.

In 1994 Florida Housing, a not-for-profit corporation, signed a contract (the Agreement) with a government corporation, the RTC. In that Agreement, the RTC agreed to sell to Florida Housing a 192-unit apartment complex at a steep discount. In return for getting the property at a bargain-basement price, Florida Housing, among other things, contractually promised that for 40 years it would offer each of its 192 units at a discount rate to either "Lower-Income Families" or "Very Low-Income Families," as those terms are defined in the Agreement.

To ensure that Florida Housing kept its end of the bargain, the Agreement also required it to file with the RTC, or with its private monitoring agent, a yearly report on the number of units in the apartment complex that were being occupied by Lower-

---

[1] The "Term" of the Agreement is more precisely defined in the Agreement itself as lasting "the later of (i) forty (40) years from the date of this Agreement or (ii) fifty (50) years from the date the Property was initially occupied as multifamily housing." Agreement Art. I § 1.1(o)(5). The parties agree that 40 years is the applicable "Term" for the purposes of this case. Thus the term of the contract runs until 2034.

Income and Very Low-Income Families.  Agreement Art. IV § 4.5.
Florida Housing also agreed to pay a yearly administrative fee.[2] *Id.*
§ 4.6.

Starting around 2016, which was just over halfway through
the 40-year term of the Agreement, Florida Housing stopped com-
plying with the yearly reporting and fee requirements in the Agree-
ment.  As a result, Affordable Housing Group, Inc. (AHG), a mon-
itoring agent of RTC's successor agency, notified Florida Housing
that it was in breach of the 1994 Agreement.  AHG then sued Flor-
ida Housing in state court, seeking several of the remedies allowed
under the Agreement.  Florida Housing filed a counterclaim
against AHG, seeking a declaratory judgment that the Agreement
was no longer in force and requesting an injunction to prevent any
further enforcement efforts.

Thereafter, the Federal Deposit Insurance Corporation
(FDIC), as the statutory successor to RTC's interest in the 1994
Agreement: (1) intervened as a counterclaim defendant to Florida
Housing's counterclaim; (2) removed the case to federal district
court; and (3) then moved to dismiss the counterclaim under Rule
12(b)(6) for failure to state a claim.

---

[2] There are a number of other obligations that Florida Housing agreed to in
the Agreement, but the reporting and administrative fee requirements are the
ones whose breaches are alleged in this case.  That is not to say Florida Hous-
ing has been fulfilling any of those other obligations since it convinced itself
that it is no longer bound by the Agreement.

23-14009                Opinion of the Court                5

Florida Housing contended in the district court, as it contends here, that the Agreement is no longer enforceable. It grounds that contention in an escape clause of the Agreement providing that instead of continuing for 40 years, the term of the Agreement will end on "the date . . . upon which there is a change in federal law which prevents RTC or the Agency[3] from enforcing this Agreement." Agreement Art. I § 1.1(o)(1). The change Florida Housing asserts is Congress' repeal in 2010 of the statute that had created the RTC and given it the authority to enter into affordable housing agreements like the one involved in this case. *See generally* 12 U.S.C. § 1441a, *repealed by* Dodd-Frank Act, Pub. L. No. 111–203, 124 Stat. 1376, 1555 (July 21, 2010). That is the reason, and the only reason, that Florida Housing contends it no longer has to comply with the reporting and fee provisions (or any provision for that matter) of the Agreement.

The district court rejected that argument and agreed with the FDIC that the Agreement was still enforceable even after §

---

[3] The Agreement defines the "Agency" as "the State Housing Finance Agency or any agency, corporation or authority of the United States government that normally engages in activities related to the preservation of affordable housing which is a successor to or assignee of RTC with respect to its powers and responsibilities hereunder." Agreement Art. I § 1.1(b).

The FDIC indisputably falls under the Agreement's definition of "the Agency." When Congress dissolved the RTC in 1995, the Federal Savings and Loan Insurance Corporation Resolution Fund became the RTC's successor-in-interest to the RTC's assets and liabilities. 12 U.S.C. § 1441a(m)(2). The FDIC serves as the Fund's manager, *id*. § 1821a(a)(1), and AHG serves as the FDIC's monitoring agent for this Agreement.

1441a's repeal.  So it dismissed with prejudice Florida Housing's counterclaim, terminated the FDIC from the case since its counterclaim was gone, and remanded the case back to state court because the FDIC's presence in the case had been the only basis for federal jurisdiction.  This is Florida Housing's appeal from that order.

## II.

### A.

The statutory background is important.  In 1989 Congress created the RTC and charged it with maintaining affordable rental housing for low- and moderate-income households.  *See* FIRREA § 501, 103 Stat. at 370 (describing the RTC's duty to conduct its operations in a manner that "maximizes the preservation of the availability and affordability of residential real property for low- and moderate-income individuals") (codified as 12 U.S.C. § 1441a(b)(3)(C)(v) (repealed 2010)).  To accomplish that purpose, the RTC was authorized to, and regularly did, sell multifamily residential properties to private entities at substantial discounts in exchange for the private entities' agreements to enter into affordable housing agreements.  *See id.* at 376 (detailing requirements for the RTC's disposition of condominium and multifamily housing properties, including lower-income occupancy requirements) (codified as 12 U.S.C. § 1441a(c)(3) (repealed 2010)).

Congress intended the RTC to be only a temporary measure and planned for it to cease operating at the end of 1995.  For that reason, in 1993 Congress enacted legislation directing the RTC and

the FDIC to begin unifying their two affordable housing programs. *See* Resolution Trust Corporation Completion Act, Pub. L. No. 103–204, § 14, 107 Stat. 2391, 2396–97 (1993). The 1993 legislation provided that after the RTC ceased operations, "any remaining authority and responsibilities" of the RTC were to be "carried out by the" FDIC. *Id.* (codified as 12 U.S.C. § 1441a(c)(17)(C) (repealed 2010)). In that same legislation, Congress also amended the Federal Deposit Insurance Act to provide that the FDIC "shall carry out any remaining authority and responsibilities of the [RTC], as set forth in section 1441a(c) of [Title 12 of the U.S. Code]." *Id.* at 2397 (codified as 12 U.S.C. § 1831q(n)(4)). The FDIC continues to enforce hundreds of the RTC's affordable housing agreements and to help it carry out that responsibility, the FDIC uses third-party monitoring agents like the one in this case, AHG.

In 2010, fifteen years after RTC ceased operations, Congress enacted the Dodd-Frank Act which, among other things, repealed the statute that had created the RTC — 12 U.S.C. § 1441a. *See* Dodd-Frank Act § 364(b), 124 Stat. at 1555. That 2010 legislation did not alter § 1831q(n)(4), which still gives the FDIC its continuing obligation and authority to "carry out" the RTC's responsibilities. *See* 12 U.S.C. § 1831q(n)(4).

### B.

The issue before us is one of contract interpretation in light of statutory change: whether the rent and occupancy provisions in the 1994 Agreement depend on § 1441a's continued existence. Florida Housing says the answer is "yes"; the FDIC and AHG say

the answer is "no."  To decide that issue, under both federal and Florida law,[4] we start with the plain language of the contract — which is where we should end our analysis if the contract's plain language is clear and unambiguous.  *See, e.g.*, *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 (11th Cir. 2008); *Hamilton Constr. Co. v. Bd. of Pub. Instruction of Dade Cnty.*, 65 So. 2d 729, 731 (Fla. 1953).

Florida Housing argues that the repeal of § 1441a(c) is "a change in federal law which prevents [the FDIC] from enforcing" the terms of the Agreement.  In its view, the contractual "obligation to comply with certain rent and occupancy restrictions was dependent upon the continued existence of a federal statute (12 U.S.C. § 1441a(c))," and when Congress repealed § 1441a and all of its parts, Florida Housing's "compliance obligations ended."  As Florida Housing puts it, the repeal of § 1441a(c) means that "there remains no rent [or] occupancy restrictions for" the FDIC to enforce.

In its briefs Florida Housing insists that its argument isn't "that repealing § 1441a(c) eliminated the [FDIC's] jurisdiction to enforce rent and occupancy restrictions."  Instead, its argument is

---

[4] In its "Governing Law" section, the Agreement provides: "This Agreement, as it may affect the rights, remedies and obligations of RTC or the Agency, shall be governed by and construed in accordance with federal law."  Agreement Art. VII § 7.4.  And to the extent "federal law does not apply, the provisions of this Agreement shall be governed by and construed in accordance with the laws of [Florida]."  *Id.*

that when they entered the Agreement "the parties intended that [Florida Housing's] obligations to comply with specific rent and occupancy limits were dependent on the continued existence and authority of § 1441a(c), as amended." But there is nothing in the Agreement that Florida Housing entered into that states or even implies that the contractual obligations it agreed to fulfill were to end when § 1441a(c) did. The sections of the Agreement that impose the burdens that Florida Housing is seeking to escape don't even mention § 1441a or 1441a(c). *See* Agreement Art. II § 2.2 (occupancy requirements), *id.* Art. III § 3.1 (rent requirements). Nor is § 1441a or any part of it mentioned in any other operative section of the Agreement.

The only place § 1441a is mentioned in the Agreement is in the Recitals part and in the Definitions part. The Recitals contain this sentence: "Pursuant to [12 U.S.C. § 1441a(c)], as amended, [Florida Housing] must agree to comply with certain occupancy and rent restrictions *for the remaining useful life of the Property*, and the parties hereto have entered into this Agreement to evidence [Florida Housing's] agreement to comply with such restrictions." Agreement, Recitals (emphasis added). Of course, introductory clauses to contracts, like the Recitals section in the Agreement, generally aren't binding and serve only to express desires of the parties. *See Barseback Kraft AB v. United States*, 121 F.3d 1475, 1481 (Fed. Cir. 1997) (explaining that under federal law, introductory clauses to a contract "express only desires, not binding commitments"); *Rose v. M/V "Gulf Stream Falcon,"* 186 F.3d 1345, 1350 (11th Cir. 1999) (explaining that under Florida law, "'whereas' or other prefatory

clauses are not binding"). Even so, the Recitals section in this Agreement actually works against Florida Housing's position because it pegs the duration of the agreement to something other than the continued existence of § 1441a(c).

The only other place in the Agreement where § 1441a or any part of it is mentioned is in the Definitions section, which states that: "'Act' means [12 U.S.C. § 1441a], as amended, or any corresponding provision or provisions of succeeding law as it or they may be amended from time to time." Agreement Art. I § 1.1(a). It is odd that "Act" is defined, because other than in the definitions section, the Agreement never again uses the word "Act." Not once, not anywhere. It's a dead end definition. But that oddity does not help Florida Housing's argument, which is a road to nowhere.

So Florida Housing's insistence that this is not so much a case of statutory interpretation as contract interpretation does not help its position either. The Agreement explicitly and specifically prescribes how long Florida Housing must comply with its occupancy and rent provisions. The Recitals section of the Agreement plainly states that § 1441a(c) required Florida Housing to "agree to comply with certain occupancy and rent restrictions *for the remaining useful life of the Property*," and Florida Housing did agree to do so, as evidenced by it entering into the Agreement. Agreement, Recitals (emphasis added).

We enforce the plain language of contracts unless there is some overriding authority superseding that language. *See Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1283 (11th Cir. 2015) ("The only

plausible reading of [Fla. Stat.] § 627.418(1) is that where [an insurance] policy provides coverage beyond any limitation in the code, the court must enforce the terms of the contract as written unless the code expressly authorizes other penalties."). The plain language of the Agreement requires Florida Housing to comply with its provisions for a term of 40 years. *See* Agreement Art. I § 1.1(o)(5). Florida Housing would have us rewrite that provision to provide that it had to comply with the terms of the Agreement only so long as § 1441a(c) remained in the statute. That's not what the Agreement says. We enforce contracts, we don't rewrite them.

Nor is there any need to look beyond the Agreement to understand Florida Housing's obligations under the restriction provisions. The restrictions are *explicitly detailed* in the Agreement to which Florida Housing *explicitly agreed* when it signed it. *See* Agreement Art. II § 2.2 (occupancy requirements), *id.* Art. III § 3.1 (rent requirements). We have no need to look anywhere other than the Agreement to conclude that Florida Housing's counterclaim fails.

But Florida Housing would have us look elsewhere, specifically to the statutory scheme underlying the transfer of authority from the RTC to the FDIC. Florida Housing stated in its briefs that it doesn't challenge the FDIC's jurisdiction or authority to enforce occupancy and rent restrictions generally. *See* Appellant's Br. at 14; Reply Br. at 4. But it changed its tune at oral argument and argued there that when § 1441a(c) was repealed, the FDIC was left with no authority to enforce any affordable housing agreement that the RTC made. Florida Housing's "new argument comes too late"

because "[w]e do not consider arguments raised for the first time at oral argument." *Hernandez v. Plastipak Packaging, Inc.*, 15 F.4th 1321, 1330 (11th Cir. 2021).

In any event, Florida Housing's new argument fares no better than its old one. The repeal of § 1441a(c) did not strip government entities generally, or the FDIC specifically, of authority to enforce affordable housing agreements entered into by the RTC.

Section 1441a(c) had expressly provided that the lower-income occupancy requirements were enforceable by several people or entities including "any agency, corporation, or authority of the United States Government." FIRREA § 501, 103 Stat. at 381 (codified as 12 U.S.C. § 1441a(c)(11)(B) (repealed 2010)). When that provision was taken out of the statute, Florida Housing argues, the FDIC's authority to enforce the Agreements went with it.

But that's not what the Agreement, which Florida Housing freely entered, says. In the Agreement, the parties agreed that:

> *If [Florida Housing] defaults in the performance of any of its obligations under this Agreement*, or breaches any covenant, agreement or restriction set forth herein, . . . RTC or *the Agency shall be entitled to apply to any court* having jurisdiction . . . for specific performance of this Agreement, for an injunction against any violation of this Agreement, for the appointment of a receiver to take over and operate the Property in accordance with the terms of this Agreement or for such other relief as may be appropriate. . . .

Agreement Art. VI § 6.1(a) (emphasis added). The parties could not have been clearer that the RTC "or the Agency" has the authority to judicially enforce the terms of the Agreement. The "Agency" is the FDIC and its monitoring agent, AHG. *See supra* at 5. There is no dispute about that. So the parties to the Agreement agreed that the FDIC and AHG would have the authority to enforce it.

Florida Housing would have us amend the key language in the Agreement to say that the only authority that the RTC or the Agency had was to judicially enforce the minimum rent and occupancy restrictions set out in § 1441a(c), not to enforce the terms of agreements that had been negotiated and entered by the RTC and purchasers. But we are not in the business of amending contractual agreements. We interpret them. We are powerless to amend them. *See, e.g.*, *Belize Telecom, Ltd.*, 528 F.3d at 1307; *Hamilton Constr. Co.*, 65 So. 2d at 731; *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) ("[W]hen the terms of a voluntary contract are clear and unambiguous, the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties.") (alteration and quotation marks omitted) (applying Florida law); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117 (11th Cir. 1999) ("A party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract.") (quotation marks omitted) (applying Florida law).

Based on the language of the Agreement itself, "the Agency" (meaning the FDIC or AHG as the monitoring agent), is "entitled to apply to any court having jurisdiction" to seek any of the Agreement's contractually listed remedies. Agreement Art. VI § 6.1(a). That is exactly what AHG did when it filed suit in state court against Florida Housing seeking, among other things, an injunction against any violation of the Agreement and the appointment of a receiver to take over and operate the Property in accordance with the terms of the Agreement. And that is also exactly what the FDIC did when it intervened as a defendant to Florida Housing's counterclaim.

Florida Housing's new argument based on the repeal of the statute is thus misplaced. It does not matter whether, when Congress repealed § 1441a(c), it intended to strip "any agency, corporation, or authority of the United States Government" of the broad *statutory authority* to judicially enforce occupancy requirements that had been found in § 1441a(c) before its repeal. The FDIC and AHG don't base their authority to judicially enforce the occupancy and rent restrictions in the Agreement on any statutory authority that was once found in § 1441a(c). Instead, they base their authority to judicially enforce the Agreement on the Agreement itself. Florida Housing *explicitly agreed* to the judicial enforceability of the Agreement by the RTC or the "Agency" (here, the FDIC and AHG). *See* Agreement Art. VI § 6.1(a) That Agreement remains enforceable.

In summary, when Congress repealed § 1441a in 2010, it did not silently relieve Florida Housing of its obligation to comply with the Agreement.  The Agreement is clear.  It gives the FDIC and AHG the *contractual authority* to judicially enforce the occupancy and rent restrictions in the Agreement.  No federal statute has abrogated that contractual authority.  Florida Housing's counterclaim thus fails to state a claim, and the district court properly dismissed it under Rule 12(b)(6).

## C.

Our decision is based on the terms of the Agreement itself. But there is an independently adequate additional reason why the FDIC and its monitoring agents have the authority to enforce agreements, like this one, that were made by the RTC, even if the agreements themselves do not explicitly authorize them to do so. They have the statutory authority to do so.

The authority of the FDIC, as RTC's successor, to enforce the Agreement did not dissipate into the mist when Congress repealed § 1441a(c).  From its inception, the RTC was meant to be only a temporary corporation.  FIRREA § 501, 103 Stat. at 391 (codifying in 1989 in the same Act that created the RTC that the RTC "shall terminate not later than December 31, 1996"); *see also* Resolution Trust Corporation Completion Act § 7, 107 Stat. at 2384 (amending in 1993 the termination date of the RTC to be not later than December 31, 1995).  Knowing that it would not be around indefinitely, in 1993, which was two years before the RTC would be dissolved in 1995 and was long before Congress repealed § 1441a

in 2010, Congress enacted legislation planning the transfer of RTC's authority to the FDIC. *Id.* at § 14, 107 Stat. at 2396–97.

That means the year *before* Florida Housing entered into the 1994 Agreement in this case, Congress had already amended § 1441a(c), and added § 1441a(c)(17), which provided that RTC's "remaining authority and responsibilities" would transfer to the FDIC. *Id.* (codified as 12 U.S.C. § 1441a(c)(17) (repealed 2010)). The assignment of those responsibilities to the FDIC is entirely consistent with 12 U.S.C. § 1831q(n)(4), which states: "Beginning not later than October 1, 1995, the [FDIC] shall carry out any remaining authority and responsibilities of the Resolution Trust Corporation, as set forth in section 1441a(c) of this title." Section 1831q(n)(4) remains in full force and effect. And Congress enacted it in 1993, *before* it repealed § 1441a(c) in 2010 — and *before* Florida Housing entered into the 1994 Agreement. *See* Resolution Trust Corporation Completion Act § 14, 107 Stat. 2396–97.

Florida Housing's contention that § 1831q(n)(4) actually confers *no authority* to the FDIC because it cross-references to a now-repealed statute, § 1441a(c), would render § 1831q(n)(4) wholly superfluous. *See In re Griffith*, 206 F.3d 1389, 1393 (11th Cir. 2000) (en banc) (explaining that we "disfavor interpretations of statutes that render language superfluous") (quotation marks omitted). And it would imply that Congress was unaware of the existence of a statute on the books. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (explaining that courts "assume that Congress is aware of existing law when it passes legislation."). We reject

23-14009    Opinion of the Court    17

Florida Housing's interpretation of the statutory scheme. The FDIC has both the statutory and contractual authority to stand in the RTC's shoes to enforce the terms of the 1994 Agreement. *See* 12 U.S.C. § 1831q(n)(4).

**AFFIRMED.**